Rochester and Lake Ontario Water Company, Respondent,
*v.* The City of Rochester, Appellant.

1. Water Company Incorporated under Transportation Cor-
porations Law (L. 1890, Ch. 566, as Amd. by L. 1892, Ch. 617).for the
Purpose of Supplying Water to Towns and Villages Adjacent to
a·City — When It May Lay Its Water Mains and Pipes through the
City — When Entitled to Injunction Restraining the City from
Preventing the Laying of Water Pipes.  Where a water works com-
pany, duly incorporated under the provisions of the Transportation Cor-
porations Act (L. 1890, ch. 566, as amd. by L. 1892, ch. 617), for the
purpose of supplying water to certain villages and towns lying upon
opposite sides of a city, has paid the organization charges imposed by the
statute and has located and procured a right of way through the towns
lying on the westerly side of the city, as required by the statute, and has
obtained by a contract with a railroad company the right to lay its water
mains upon the railroad's right of way through the city and the town on
the easterly side of the city to villages upon the line of the railroad, and
has also entered into a contract with another corporation to construct its
water plant and lay its water mains and pipes, and made agreements to
supply water to a number of manufacturing establishments in the towns,
outside of the city, and to supply the railroad company with the water
that it requires in the city and at its stations along the route of the
water company, the franchise rights of the water company have become
vested thereby, and the company has the right and power, under section
82 of the statute, to lay its water mains along the route which it has
adopted and located upon the railroad's right of way through the city,
without the consent or permission of the authorities of the city, and is
entitled to an injunction restraining the city, its officers, agents and serv-
ants, from interfering with or preventing it from laying its water pipes or
mains across the streets of the city intersected by the railroad's right of
way.

2. When Ordinances Adopted under Provisions of the Charter
of the City Have no Application to the Laying of Water Mains
through the City — When Superintendent of Water Works of
City May Not Interfere with Water Pipes and Mains Passing
through the City — Effect of Statutes Enacted after Water
Company's Rights Have Been Acquired.  Ordinances adopted by the
common council of a city, after the passage of the Transportation Corpo-
rations Law, for the purpose of regulating the opening of street surfaces
for the laying of gas and water pipes and the making of sewer connec-
tions, although authorized by the charter of the city, have no application
to and cannot regulate or prohibit the laying of water mains through the

city by a water company organized under the statute in question for the purpose of supplying water to adjacent towns and villages, since the legislature could not have intended to vest in the common council the right to repeal or amend, by ordinance, a general statute of the state; neither do the provisions of the charter of cities of the second class, (L. 1898, ch. 182) under which, in connection with special statutes not inconsistent therewith, the city, in this case, is now acting and by which the commissioner of public works is empowered to appoint a superintendent of water works to see that the city is supplied with wholesome water for public and private use, give such superintendent any power to prohibit the laying of water pipes under the general laws or control the water of a corporation organized under the Transportation Corporations Law so long as it is only passing through the city in the mains of the company for use elsewhere; nor can the vested rights acquired by the company in pursuance of its corporate purposes be affected by subsequent statutes enacted for the purpose of preventing the company from laying its pipes within the territory of the city.

3. WHEN WATER WORKS COMPANY NOT REQUIRED TO GO AROUND CITY WITH ITS WATER MAINS AND PIPES. Although the water company could have located its line around the city by going a longer distance through a town not named in its certificate of incorporation, it need not do so where such town does not directly intervene between the towns to be supplied with water and named in such certificate, or furnish the direct, natural and feasible route between the same.

4. POSSIBILITY THAT WATER COMPANY MAY BECOME COMPETITOR OF CITY IN SUPPLYING WATER TO CONSUMERS WILL NOT PREVENT COMPANY FROM LAYING WATER MAINS AND PIPES THROUGH THE CITY. Notwithstanding the fact that such water company may become a competitor of the city which owns and operates a municipal water plant which supplies water to its inhabitants for domestic and manufacturing purposes, and has for many years supplied water to the railroad company upon whose right of way the water company has located its route through the city and with which it has contracted to furnish water at a lower rate than that at which the city has furnished it, such fact does not affect the statutory right of the water company to run its mains through the city in order to comply with the purposes of its grant; when the company attempts to supply water to the inhabitants of the city within its territorial limits, the power to do so may then be questioned by the municipality, and the courts may then be called upon to determine the extent of its powers in that regard.

5. WHEN CITY MAY NOT ATTACK VALIDITY OF WATER COMPANY'S RIGHT OF WAY THROUGH THE CITY UPON LANDS OF RAILROAD COMPANY. Whether the water company has obtained from the railroad company a valid right of way along its lands is a question that cannot be raised by the city so long as the railroad company does not question or oppose such right.

6. LOCAL AUTHORITIES SHOULD BE GIVEN REASONABLE CONTROL IN SUCH CASES AS TO THE STREETS TO BE USED, AND THE PLACE AND MANNER IN WHICH THE PIPES SHOULD BE LAID. While the justice of the provision which permits the laying of water pipes through an adjoining municipality, and thus preventing such municipality from depriving its neighbors from receiving a supply of water, where such municipality happens to intervene between the source of supply and the place of distribution, is fully recognized, it is suggested that the legislature might properly have placed some restriction upon the use of the streets in cities and possibly in villages that should be made by water companies; that the city or village authorities should be given some voice as to the streets that should be used, and the place and manner in which the pipes should be laid therein; and that it should not be left entirely to the judgment and discretion of the officers of the water company to place its pipes wherever they please, without regard to the wishes or reasons of the officers of the city who may desire to have them placed elsewhere.

*Rochester & Lake Ontario Water Co.* v. *City of Rochester*, 84 App. Div. 71, affirmed.

(Argued June 12, 1903; decided October 6, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 27, 1903, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William A. Sutherland* and *John Van Voorhis* for appellant. Plaintiff's charter does not permit it to do any business in the city of Rochester. (*Jemison* v. *C. S. Bank*, 122 N. Y. 135 ; *People ex rel.* v. *Campbell*, 144 N. Y. 166 ; *Pearce* v. *M. & I. R. R. Co.*, 62 N. Y. 441 ; *Leslie* v. *Lorillard*, 110 N. Y. 519 ; *Kent* v. *Q. M. Co.*, 78 N. Y. 159 ; *Zanesville* v. *G. L. Co.*, 47 Ohio St. 1.) The plaintiff was not given any right to cross any of the streets of Rochester without the permission of the local authorities. (*Townsend* v. *Little*, 109 U. S. 504 ; *Lewis* v. *City of Syracuse*, 13 App. Div. 587 ; *Matter of M. H. Bank*, 153 N. Y. 199.) The two special statutes of 1903 effectually bar the plaintiff from the streets of Rochester. (*People ex rel.* v. *Spicer*, 99 N. Y. 225 ;

*Wood* v. *Wellington*, 30 N. Y. 218.) The plaintiff had obtained no vested rights in any streets in the city of Rochester. (*H. R. T. Co.* v. *W. T. & R. Co.*, 135 N. Y. 393 ; *People ex rel.* v. *Dolan*, 126 N. Y. 166 ; *Munn* v. *Illinois*, 94 U. S. 113 ; *City of New York* v. *Herdje*, 68 App. Div. 370 ; *Buel* v. *McFadden*, 44 C. C. A. 494.) The plaintiff is not aided in its attempt to invade the streets of Rochester by the claim that it may cost more money to lay its water mains around Rochester than through Rochester. (*L. V. R. R. Co.* v. *Adams*, 78 App. Div. 427 ; *Buffalo* v. *Dudley*, 14 N. Y. 336.) The charter of the city of Rochester was intended by the legislature to confer, and did confer, upon the city of Rochester the complete control of the streets of the city. That power has not been taken from it by the Transportation Corporations Law. (L. 1899, ch. 481, § 39 ; *Vil. of Carthage* v. *Frederick*, 122 N. Y. 268 ; *Walrath* v. *Abbott*, 85 Hun, 181 ; *Cronin* v. *People*, 82 N. Y. 318 ; *People ex rel.* v. *Pratt*, 129 N. Y. 68 ; *City of Rochester* v. *West*, 164 N. Y. 513 ; *A. R. T. Co.* v. *Hess*, 125 N. Y. 641 ; *Barhite* v. *Home Tel. Co.*, 50 App. Div. 25 ; *City of Rochester* v. *B. T. Co.*, 52 App. Div. 6 ; *Vil. of Bolivar* v. *B. W. Co.*, 62 App. Div. 484.) If section 82 of the Transportation Corporations Law can be construed so as to permit the plaintiff to lay its pipes in the streets of Rochester without the consent of the common council, and the ordinance referred to is not potential to prohibit the laying of such pipes, then the act of March 19, 1903, settles the question. (*People ex rel.* v. *Butler*, 147 N. Y. 164 ; *Smith* v. *People*, 47 N. Y. 330 ; *Riggs* v. *Palmer*, 115 N. Y. 506 ; *N. Y. & L. I. B. Co.* v. *Smith*, 148 N. Y. 540 ; *Hearst* v. *Shea*, 156 N. Y. 169 ; *Hickman* v. *Pinckney*, 81 N. Y. 211 ; *People ex rel.* v. *G. & S. T. Co.*, 98 N. Y. 67 ; *People ex rel.* v. *Superior Court of Buffalo*, 30 N. Y. S. R. 704 ; *Mongeon* v. *People*, 2 T. & C. 128 ; *S. P. R. Co.* v. *Russell*, 7 N. Y. S. R. 595.) The water company secured no right to furnish water in the city by virtue of the alleged grant from the New York Central railroad. (*A. N. R. R. Co.* v. *Brownell*, 24 N. Y. 345 ; *B. T. R. R. Co.* v. *H. V. R. R.*

*Co.*, 76 App. Div. 184 ; *Quackenbush* v. *G. Ins. Co.*, 77 App. Div. 168.) The Transportation Corporations Law has not taken away from the city of Rochester its police power. (*Jones* v. *Foster*, 43 App. Div. 35 ; *Village of Carthage* v. *Frederick*, 122 N. Y. 268 ; *People* v. *Squiers*, 107 N. Y. 606 ; *W. U. T. Co.* v. *Mayor, etc.*, 3 L. R. A. 453 ; *W. U. T. Co.* v. *Atty.-Gen.*, 125 U. S. 548 ; *State of Louisiana* v. *Schlemmer*, 10 L. R. A. 135 ; *State* v. *Parish of Orleans*, 39 La. Ann. 138 ; *Stone* v. *Mississippi*, 101 U. S. 817 ; *Stein* v. *Stape*, 27 La. 123 ; *People* v. *G. M. L. Ins. Co.*, 91 N. Y. 174.) There is an express prohibition in the Transportation Law itself against any corporation organized under that law laying pipe lines through cities without the consent of the common council. (*Crocker* v. *Whitney*, 71 N. Y. 161 ; *People* v. *U. Ins. Co.*, 15 Johns. 383.)

*Albert H. Harris* for respondent. The plaintiff has the right to lay its water mains through the city of Rochester on the route which it has adopted and secured without asking the defendant's permission. (Thomp. on Highways, 24 ; *Dygert* v. *Schenck*, 23 Wend. 446 ; 3 Kent's Comm. 557 ; *Van Brunt* v. *Town of Flatbush*, 128 N. Y. 50 ; *Eels* v. *A. T., Co.*, 143 N. Y. 133 ; *Palmer* v. *L. E. Co.*, 158 N. Y. 231 ; *People ex rel.* v. *Priest*, 75 App. Div. 131 ; *Town of Clay* v. *Hart*, 25 Misc. Rep. 114 ; *Starr* v. *Railroad*, 4 Zab. 572 ; *Jersey City* v. *Hudson*, 2 Beas. 420 ; *Perley* v. *Chandler*, 6 Mass. 492 ; *Allen* v. *Boston*, 159 Mass. 324.) The plaintiff's rights are not affected by the amendments to section 157 of the charter of the city of Rochester. (*S. R. T. Co.* v. *Mayor, etc.*, 128 N. Y. 510 ; *Super.* v. *Brogden*, 112 U. S. 261 ; *Robinson* v. *Goners*, 138 N. Y. 425 ; *Dartmouth College* v. *Woodward*, 4 Wheat. 519 ; *People* v. *O'Brien*, 111 N. Y. 1 ; *Indianapolis* v. *C. G. T. Co.*, 140 Ind. 107 ; *Wheat* v. *Alexandria*, 88 Va. 742 ; *People ex rel.* v. *Deehan*, 153 N. Y. 528 ; *W. U. T. Co.* v. *City of Syracuse*, 24 Misc. Rep. 338 ; *Milhau* v. *Sharp*, 27 N. Y. 611 ; *S. R. T. Co.* v. *Mayor, etc.* 128 N. Y. 510 ; *R. H. & L. R. R. Co.* v. *N. Y., L. E. & W.*

*R. R. Co.*, 110 N. Y. 128.)  The amendments should be given prospective effect, and only against those not having existing rights.  (*New York & Oswego R. R. Co.* v. *Van Horn*, 57 N. Y. 473.)  The grant of an easement from the New York Central and Hudson River Railroad Company to the plaintiff was valid.  (*G. T. R. R. Co.* v. *Richardson*, 91 U. S. 454; *Matter of N. Y. C. R. R. Co.* v. *M. G. L. Co.*, 63 N. Y. 326; *Guerney* v. *M. E. Co.*, 30 L. R. A. 534; *Railroad Company* v. *Waltern*, 17 Ill. App. 582; *W. U. T. Co.* v. *Rich*, 19 Kans. 517; *Pierce* v. *Railroad*, 141 Mass. 481; Lewis on Eminent Domain [2d ed.], § 584; *Roby* v. *N. Y. C. & H. R. R. R. Co.*, 142 N. Y. 176.)

HAIGHT, J.  This action was brought to restrain the city of Rochester, its officers, agents and servants, from interfering with, or preventing the plaintiff from, laying its water pipes or mains across certain streets of the city.

The plaintiff is a domestic corporation organized under the Transportation Corporations Law, chapter 566, Laws of 1890, as amended by chapter 617, Laws of 1892, for the purpose of supplying water to the villages of Brighton and Fairport and the towns of Greece, Gates and Brighton, in the county of Monroe.  The trustees of the villages and the officers of the towns have, under due form of law, executed in writing permits, authorizing the formation of the plaintiff as a corporation, for the purpose of supplying their respective villages and towns with water, which were duly acknowledged and annexed to the certificate of incorporation and filed therewith.  The plaintiff, after perfecting its organization and paying the charge therefor imposed by the statute, determined to take its supply of water from Lake Ontario at a point near Rigney's Bluff westerly from the point at which the Genesee river empties into the lake, and to lay its pipes therefrom southerly through the towns of Greece and Gates to the city of Rochester, and thence through the city to the town of Brighton, and so on easterly to the village of Fairport.  It caused a map to be made of the lands intended

to be taken or entered upon in the route which it had adopted, duly signed by the officers of the company and filed in the office of the clerk of the county, as required by section 83 of the Transportation Corporations Law. It then procured its right of way through the towns of Greece and Gates to the city of Rochester, and entered into a contract with the New York Central & Hudson River Railroad Company by which it was given the right to lay its mains upon the company's right of way, through the city of Rochester and the town of Brighton to the village of Fairport. It entered into a contract with another corporation to construct its plant and lay its pipes, and has made agreements to supply water to a number of manufacturing establishments, including railroad repair shops, in the towns outside of the city of Rochester, and to supply the New York Central & Hudson River Railroad Company with the water that it required in the city of Rochester, and at its stations east between the city and Fairport. After which it commenced the laying of its pipes and undertook to dig trenches therefor across one or more of the streets of the city upon the right of way of the railroad company, and was prevented from so doing by the officers of the city, acting through its police department, and thereupon this action was brought to restrain such interference.

The trial court has found as a fact that there was a legitimate demand for water in the towns and villages specified; and that it was necessary for the plaintiff, in order to carry out the purposes of its incorporation and to fulfill the contracts which it had made and assumed, to lay its water mains along the route which it had adopted through the city of Rochester; and that it had acquired an easement to cross the intersecting streets. At the request of the defendant the court found, "That it is a physical possibility to carry water from Lake Ontario to the towns of Greece and Gates on the south and west of Rochester, and to the town of Brighton and the villages of Brighton and Fairport on the east of Rochester, without laying any pipes within any portion of the territory of the city of Rochester, but that to supply the said territory east of

Rochester would require pipes to be laid through the town of Irondequoit, in which the plaintiff has neither sought nor obtained any permit from the local authorities, and has acquired no right of way, and the cost of such construction would be materially greater." The town of Greece lies between the lake and the city of Rochester. The town of Gates is west of the city, and that of Brighton is east of the city. It, there-fore, is necessary in laying a main from the town of Gates to the town of Brighton and to the villages on the east of the city, to pass through the city of Rochester, or to go around the city through the town of Irondequoit which would involve the laying of the pipes for a much greater distance, and con-sequently cause a considerable increase in the cost of the construction.

Section eighty-two of the statute under which the plaintiff was incorporated provides as follows : "Every such corpora-tion shall have the following additional powers :

"1. To lay and maintain their pipes and hydrants for deliv-ering and distributing water in any street, highway or public place of any city, town or village in which it has obtained the permit required by section eighty of this article.

"2. To lay their water pipes in any streets or avenues or public places of an adjoining city, town or village, to the city, town or village where such permit has been obtained.

"3. To cause such examinations and surveys for its pro-posed water works to be made as may be necessary to deter-mine the proper location thereof, and for such purpose by its officers, agents or servants to enter upon any lands or waters in the city, town or village where organized, or, in any adjoin-ing city, town or village for the purpose of making such examinations or surveys, subject to liability for all damages done."

The first subdivision of this statute gives to water compa-nies the right to lay and maintain their pipes and hydrants in any street, highway or public place of the city, town or vil-lage in which it has obtained a permit to supply its inhabitants with water. The second subdivision gives a like power to the

company as to its pipes in an adjoining city, town or village. It is upon this latter subdivision of the statute that the plaintiff bases its claim of right to run its pipes through the city of Rochester. The city, as we have seen, adjoins the town of Gates on the west and the town of Brighton on the east. It owns and operates a municipal water plant, by which it supplies itself and its inhabitants with water. It also has for many years supplied the New York Central & Hudson River Railroad Company with water within the city at an annual rental of from $18,000 to $20,000 per year. The city, therefore, does not require water from the plaintiff corporation, and objects to its occupying any portion of the streets with its pipes. The purpose of this provision of the statute is manifest. The legislature did not propose that one municipality, which happened to be more favorably situated, should have the power to prevent another and adjoining municipality from obtaining water, where it becomes necessary to pass through the territory of such adjoining municipality to reach the source of supply. This was settled in the case of *Village of Pelham Manor* v. *New Rochelle Water Company* (143 N. Y. 532), in which case the court went to the extent of holding that a water company had the right to lay its water pipes in the streets of an adjoining town or village, whenever it was necessary to effectually and properly execute the purpose for which it was created, even though the point in the adjoining town where the pipes were laid did not intervene between the source of supply and the place of distribution. A vigorous assault has been made by the counsel for the appellant upon the wisdom of this statute. While we have no power to review the legislative discretion, it may not be out of place to here make some suggestion with reference to this particular provision. We fully recognize the justice of the provision which permits the laying of water pipes through an adjoining municipality, and thus preventing such municipality from depriving its neighbors from receiving a supply of water, where such municipality happens to intervene between the source of supply and the place of distribution.

This power, as it was originally granted, was limited to towns and villages, but under the provision of chapter 617 of the Laws of 1892, the right to lay pipes through the streets, avenues and public places, was extended to cities.  This provision was adopted doubtless for the reason that it was found that the compelling of a water company to lay its mains around the territory of a city many miles in extent, might involve such expense as to operate as a practical prohibition to the supplying of water to villages which happen to be situated so that the city intervenes between them and the source of water supply.  We think, however, that the legislature might properly have placed some restriction upon the use of the streets in cities, and possibly in villages, that should be made by water companies; that the city or village authorities should be given some voice as to the streets that should be used, and the place and manner in which the pipes should be laid therein; and that it should not be left entirely to the judgment and discretion of the officers of the water company to place its pipes wherever they please, without regard to the wishes or reasons of the officers of the city who may desire to have them placed elsewhere.  There is, however, no complaint with reference to the location of the company's line in this case, provided it has the right to lay its pipes through the city.  The line selected upon the right of way of the New York Central & Hudson River Railroad Company relieves the city from having the pipes laid lengthwise through its streets, for it only crosses the streets that are crossed by the railroad tracks.

The trial court has awarded judgment to the effect that the plaintiff has acquired the right to lay and maintain its water mains through the city of Rochester upon the strip of land owned by the New York Central & Hudson River Railroad Company; and that the city, its officers, agents and servants, be enjoined from interfering with the plaintiff in laying its water mains across the streets of the city.  In awarding such judgment the court has very properly imposed certain conditions upon the plaintiff, regulating the manner

in which it should do its work; providing for the guarding of trenches; the restoring of pavements and streets in which trenches have been dug; to save the city harmless from liability, and to give the commissioner of public works of the city twenty-four hours' notice before commencing the work of excavating in any of the streets. The representatives of the city have not suggested that further restrictions should be imposed, and, indeed, we do not understand them as complaining of the judgment, except in so far as it holds that the plaintiff has acquired the right to lay its pipes into or through the territory of the city.

We are thus brought to a consideration of the defenses interposed by the defendant. The city in its answer has set out section forty of its charter, as finally amended by chapter twenty-eight of the Laws of 1894, which gives the common council of the city the power to enact ordinances for the following purposes: "To regulate and prevent the use and encumbering of streets; * * *· to regulate the opening of street surfaces and connections with sewers, and the laying of gas, water pipes and mains and sewer connections." It further alleges that on or about the 11th day of May, 1897, the common council of the city duly enacted an ordinance relating to streets, which contained the following: " Section 1. No person shall injure any pavement, sidewalk, crosswalk or sewer, nor dig any area, sewer, lateral sewer or other excavation in any public street, nor remove any earth or stone therefrom, within the city of Rochester, without permission in writing from the executive board, and under such conditions as said board may impose, and the executive board may order any sewer or excavation constructed contrary to the provisions of this section to be filled up or altered at the expense of the owner." Further provisions of the ordinances make a violation punishable by a fine not exceeding $150, or to imprisonment not exceeding one hundred and fifty days, or to both such fine and imprisonment. The answer further alleges that the city of Rochester is a city of the second class, and that under section 483 of chapter 182 of the Laws of

1898, entitled "An act for the government of cities of the second class," it is provided that "nothing contained in this act should be construed to repeal any statute of the state or ordinance of the city, * * * not inconsistent with the provisions of this act." It is also alleged that by section 109 of the latter act the commissioner of public works "has cognizance, direction and control of the construction, alteration, repair, care, paving, flagging, lighting and improving streets, ways and sidewalks;" that under section 142 of the act the commissioner of public works has the jurisdiction of commissioners of highways in towns; and under section 110 he is required to appoint a superintendent of water works, to see that the city has an abundant supply of wholesome water for public and private use.

To our minds the provision of the charter of the city of Rochester, giving to the common council the power to enact ordinances upon various subjects, does not affect the questions involved in this case. The common council has enacted an ordinance to regulate and prevent the use and incumbering of streets. This undoubtedly has reference to the use and incumbering of streets upon the surface, and not especially to the use made of the soil underneath the street. That was doubtless left to the other provision which regulates the opening of street surfaces for the laying of gas and water pipes, and the making of sewer connections. This ordinance was doubtless framed to regulate the laying of the water mains of the city's plant and the connections to be made therewith by the abutting owners on the streets. It is claimed that it had reference to the water mains of water companies organized under the statute to which we have called attention; but the ordinance was adopted May 11th, 1897, after the passage of the Transportation Corporations Law. To give it the force claimed would necessitate the holding that it was the intention of the legislature to vest in the common council of the city of Rochester the power by ordinance to repeal or amend a general statute of the state. This certainly could not have been intended, for the power delegated to enact ordinances has

always been limited to such as were not in conflict with existing laws ; so that if the ordinance is to be construed as a prohibition against making any excavations in a public street for the purpose of laying water pipes by the plaintiff herein then it is in conflict with the provisions of the general statute to which we have referred, which expressly gives such power in adjoining municipalities. As to the provisions of the charter of cities of the second class, which continue in force statutes and ordinances which are not inconsistent with its provisions, they relate to those ordinances which are valid and are not in conflict with existing statutes. While the commissioner of public works is given the power of commissioners of highways and the power to appoint a superintendent of water works whose duty it is to see that the city is supplied with wholesome water for public and private use, we do not understand that it gives him any power to prohibit the laying of pipes under general laws or control over the water of the plaintiff corporation so long as it is only passing through the city in the mains of the company for use elsewhere. If an attempt is made to distribute the water within the city then the superintendent may become interested in ascertaining whether it is pure and wholesome or is contaminated.

The defendant has further alleged in its answer that by chapter 59 of the Laws of 1903, section 157 of the city charter was amended so as to substitute the commissioner of public works for the executive board, and then by adding the following : " No other person or corporation shall enter upon or excavate any road, street, highway or public place in the city of Rochester, for the purpose of laying down pipes for the conveyance of water, without the permission of the common council." And this section has been again amended since the decision in this case was made by chapter 553 of the Laws of 1903, in which there was added the following :

" Section 1. Which body may deny any such application in its discretion. No person or corporation shall furnish or distribute water within said city of Rochester from pipes, mains or conduits except under a franchise granted by an ordinance

passed by a three-fourths vote of all of the members of the common council, approved by the board of estimate and apportionment and providing for a disposition of such franchise for an adequate consideration for a period not exceeding twenty-five years and upon such terms and conditions as said common council may impose. Section 2. Any right, license or permission to any person or corporation, other than the city of Rochester, to enter upon and lay pipes for the conveyance of water in the public streets and highways of the city of Rochester, or to furnish and distribute water within said city, accruing, accrued or acquired under and pursuant to any previous act of the legislature, or part of such act, is hereby repealed and revoked. Section 3. All acts and parts of acts inconsistent with this act are hereby repealed." Section 157 of the city charter had reference to the power of the executive board over the extension of the water mains of the city, their repair and maintenance. The duties of the executive board were transferred to that of the commissioner of public works, and he was, therefore, given the power which the board had previously possessed over the streets and the extension of the water mains therein. The first amendment prevents any other person or corporation from entering upon, excavating or laying down pipes in the streets, without the permission of the common council. It may be that manufacturing corporations and abutting owners upon streets who desire to have connections made with the water mains of the city in the future must obtain the permission of the common council to open the streets and make connections with its city water system ; and that the provisions of the amendment should be construed as applying to the water works plant of the city, and, therefore, not in conflict with the general law. But as to the last amendment, made after the trial and decision of this case, we think no such construction is permissible. It was evidently intended to meet the circumstances of this case and to prevent the plaintiff from laying its pipes within the territory of the city. It remains, therefore, to be determined whether this legislation can be given force and effect. As we

4

have seen, the plaintiff corporation had been perfected and it had paid the state the taxes imposed therefor. It had caused surveys to be made and a map filed, locating its route, and had entered into a contract for the construction of its plant, including the laying of its pipes. It had acquired its right of way and had entered into contracts for the supplying of water, in accordance with its charter. It had expended money and incurred obligations. All this had taken place before the legislation of 1903. The plaintiff, in incurring these obligations and in making these expenditures, had the right to rely upon the faith of the franchise which it had acquired, under which it had the right to supply the localities with water. We think these rights had become vested and were property within the meaning of the Constitution, which prohibits the deprivation of a person of property without due process of law. (*People* v. *O'Brien,* 111 N. Y. 1.)

As we have seen, under the general statute, the right was given to the water company to lay its pipes in the highway of an adjoining city, town or village. No consent of the municipal authority was required. While we have made suggestions with reference to this legislation, we think that the whole matter is subject to legislative control. The care, control and management of the highways at common law were vested in the sovereign. In this state the sovereign power is with the people, as represented in their legislature. The sovereign power over highways may be delegated to municipalities to such an extent as the legislature may deem advisable; and when the grant by the government is made to a municipality of a portion of its sovereign power, it is to be deemed a sufficient consideration for an implied contract on the part of the municipality to perform the duties which the charter imposes, and the contract so made with the sovereign power inures to the benefit of every individual interested in its performance. (*Conrad* v. *Trustees of the Village of Ithaca,* 16 N. Y. 158.) The management and control of highways, given by the state to cities and villages, is still subject to such statutes as the legislature shall adopt with reference thereto.

And when, therefore, the legislature sees fit to sanction their use for the transportation of water for the benefit of the people of a municipality, it is a public use which the legislature has the power to authorize without the consent of the municipality.

It is suggested that it was not necessary that the plaintiff should run its line of pipe through the city of Rochester; that it could have located its line through and around the city through the town of Irondequoit. We have not been favored with a finding as to the amount of additional expense that would be involved in the making of this circuit of the city, and we consequently cannot determine as to whether it would be so great as to render the undertaking financially impossible and thus operate to deprive the villages named of an opportunity to procure water. We think a sufficient answer to this suggestion lies in the fact that the town of Irondequoit does not directly intervene between the towns named in the certificate of incorporation which seek the supply of water, or furnish the direct, natural and feasible route between the same.

The remaining suggestion, coming from the city, is to the effect that the plaintiff corporation may become a competitor of the city. This grows out of the fact appearing in the record that the city of Rochester owns and operates a municipal water plant which supplies water to its inhabitants for domestic and manufacturing purposes; that the plant cost eleven millions of dollars, and that there are three millions of dollars in municipal bonds outstanding; that for many years the New York Central & Hudson River Railroad Company has been supplied with water within the city from the municipal plant, it paying therefor from $18,000 to $20,000 per annum; that the rate charged the company by the city has been fourteen cents per thousand gallons; and that the company has entered into a contract with the plaintiff corporation to supply it with water at about one-half of that rate. This fact doubtless furnishes the chief reason on the part of the city for opposing the laying of the company's lines through the city on the right of way it has obtained. We do not at this time

deem it necessary to engage in any discussion of the merits of municipal ownership, or to determine whether the establishing of a municipal plant operates to give the city an exclusive right to supply its inhabitants with water. Under the statute, as we have seen, the company has the right to run its mains through the city, in order to comply with the purposes of its grant. When it attempts to supply water to the inhabitants of the city within its territorial limits, its power to do so may then be questioned by the municipality, and the courts may then be called upon to determine the extent of its powers in that regard.

The New York Central & Hudson River Railroad Company is not here opposing this judgment. The city of Rochester is not interested in the question as to whether the plaintiff has obtained from the railroad company a valid right of way along the company's lands. It, therefore, is not in a position to call upon the courts to determine the validity of such title.

The judgment should be affirmed, with costs.

Bartlett, J. (dissenting). In this action the plaintiff seeks a permanent injunction against the defendant and is consequently bound to show an entry into court with clean hands and a clear right to the relief demanded. The validity of plaintiff's contracts with other corporations is involved, but only for the purposes of this action, and the judgment which may be entered will necessarily be limited in its operation to the rights of parties before the court.

The plaintiff having set the court in motion cannot be heard to complain if the issues involve a wider range than it originally contemplated.

The plaintiff is a water works corporation, organized under the Transportation Corporations Law in December, 1902, naming in its certificate two villages and three towns in the county of Monroe which it proposed to supply with water. A portion of the territory named adjoins the defendant, the city of Rochester, on the east and a portion adjoins it on the

west. The plaintiff intends, according to its certificate, to obtain its supply of water from Lake Ontario, some distance west of the Genesee river, and to lay its mains southerly parallel to the river to the west line of the city of Rochester, thence through the city to the territory on the east.

The trial court found that the plaintiff, before the commencement of this action, obtained from the state of New York a franchise giving to it the right to lay and maintain its water mains through the city of Rochester, upon the route adopted by it, to the exercise and enjoyment of which the consent of the city of Rochester is not required; that thereafter the plaintiff undertook to lay its mains on the line of its proposed route at two certain streets, but was prevented by defendant exercising force to that end.

The court further finds that the New York Central & Hudson River railroad passes through the city of Rochester, and that the company owns and occupies a continuous strip of land through the city in an easterly and westerly direction, upon which its tracks are laid; that this strip of land is intersected by several streets, some of which cross at grade and some above or below grade; that the land at all of the street crossings is owned by the railroad company, subject to the public user for street purposes.

It is further found that plaintiff acquired an easement in the north six feet of said continuous strip of land, for the purpose of laying and maintaining thereon its water mains, by virtue of two written contracts with the New York Central & Hudson River Railroad Company, by which it agreed to furnish water to the railroad company in large quantities in the city of Rochester and elsewhere, on its right of way, for a term of years; that a like contract to furnish water was made by plaintiff with the Buffalo, Rochester & Pittsburg Railway Company.

It is found that the city of Rochester owns and operates a municipal water plant which supplies water to its inhabitants for domestic and municipal purposes in large quantities; that the cost of this plant was about $11,000,000, of which

$3,000,000 are represented by outstanding bonds.   The New York Central & Hudson River Railroad Company has been supplied with water by the city of Rochester, paying therefor from $18,000 to $20,000 per annum.   The Buffalo, Rochester & Pittsburg Railway Company has also paid the city of Rochester a very considerable sum per annum for water.

The plaintiff contends that on the facts found it is, by virtue of the statute and under its contracts with the Central & Hudson, possessed of a legal franchise and route through the city of Rochester on which to lay and maintain its mains.   The plaintiff admits that whenever the question is presented it will insist that it can legally furnish water, in the city of Rochester, to the railroad companies with which it has contracted and to such adjoining owners as can be reached without laying its pipes along the streets.

The plaintiff and the courts below have sought to confine the case to the one question of the legality of the route claimed by plaintiff.

It will presently appear that other questions are necessarily involved in passing upon the alleged legality of the route.

1. The first point arises under the provisions of plaintiff's charter ; it is authorized to furnish water to two villages and three towns.   Its charter does not extend to the city of Rochester, and it has no more right to sell, or furnish, water within the corporate limits of that city than it has in the city of New York.

This point goes to the foundation of the action, for the plaintiff cannot sell or furnish water even to the New York Central & Hudson River Railroad Company within the boundaries of the city of Rochester, and hence its contracts with the said company are *ultra vires* and give it no franchise or vested rights.   The plaintiff's right to lay and maintain its mains on the strip of land in question, as between it and the Central & Hudson, rests on its covenant to supply the railroad company with water.

2. While the Central & Hudson could lay water pipes on its right of way to supply itself with water, for that would be a purpose incidental to its charter, it could not sell water

to others, for that would be foreign to its charter.   Not having that right itself, it could not confer it upon the plaintiff. It could not by contract enable the plaintiff to do something which the railroad company had no right to do itself.

It is true that a railroad company, needing water for its uses and purposes, may resort to condemnation proceedings to obtain it (Railroad Law, § 7, subd. 4), but this power does not affect the present situation.

In so far as plaintiff rests its claim for equitable relief on its contracts, it asks the protection of a right by injunction that does not exist in law.   The contracts relied upon are two in number.   One Mingle entered into a contract with the Central & Hudson to furnish it for a term of years with water, which was assigned to plaintiff by Mingle, with the consent of the Central & Hudson, the plaintiff assuming performance.   Later, the plaintiff entered into a contract with the Central & Hudson for its right of way, which was granted, subject to the express condition that plaintiff should fully perform the contract to furnish water, so assigned to it by Mingle.

3.  The plaintiff further insists that its selected route through the city of Rochester rests not only on its contracts with the Central & Hudson, but on the provisions of the Transportation Corporations Law.

It, therefore, becomes necessary to consider this contention in view of the provisions of various statutes, viz.: The Transportation Corporations Law, as amended; the charter of the city of Rochester and its amendments; the act for the government of cities of the second class, sometimes called the White charter.   (Laws 1898, chap. 182.)

The plaintiff contends that, notwithstanding its route is six miles long and crosses twenty-nine streets in the city of Rochester, it can lay its mains thereon and cross said streets without interference from the local authorities.   This contention is based on section 82, subd. 2 of the Transportation Corporations Law (Birdseye's R. S. [3d ed.] vol. 3, p. 3764), which authorizes water works corporations "To lay their water pipes in any streets or avenues or public places of an

adjoining city, town or village where such permit has been obtained."

That is to say, where a corporation has received a permit from a municipality to furnish it with water, it may, in order to reach such municipality, lay its pipes in the streets of an adjoining city, town or village which lies between the water supply and the place to be furnished with water.

As the city of Rochester occupies this position as to certain of the municipalities to be supplied with water by the plaintiff, it is argued that the latter can proceed to locate its route and lay its mains without the permission or interference of the local authorities of the city of Rochester.

While the statute does not declare, in terms, that the local authorities are powerless to regulate or control the route selected in such intervening municipality, the respondent, in support of such a construction, places great reliance on the case of *Village of Pelham Manor* v. *New Rochelle Water Company* (143 N. Y. 532), decided in November, 1894.

Pelham and New Rochelle are adjoining villages. The claim of the plaintiff was that the defendant had no power to lay pipes in one of its highways without permission of the municipal authorities. Judge O'Brien, writing for the court, said : " What the defendant did was to use the road for about five hundred feet in order to connect two of its mains, which terminated in ' dead ends,' near the boundary lines of the two towns.  \*  \*  \*  So long as the defendant was without power to add to its revenues by furnishing water to the plaintiff, or any of its inhabitants, no great mischief is to be apprehended from any extensive use of the streets by the defendant.  But the legislature evidently anticipatated that a water company in performance of its functions of supplying the town and every part of it, which granted the permit, with water, might, for some reason, find it necessary to cross the boundary line of an adjoining town and use its highways, not for the purpose of supplying that town, but for the purpose of properly and effectively executing the purpose of its creation.  Such necessity has been found in this case as matter

of fact by the trial court, and hence the permission of the municipal authorities who had charge and control of the highways was not necessary."

This case was properly decided on its peculiar facts, as the law stood in 1894, but since then section 81 has been amended, and we have existing, by virtue of this amendment, the very situation, the absence of which controlled the foregoing decision, to wit, where the company claiming the right to lay its pipes in the streets of an intervening town has the power to add to its revenues by supplying it with water.

In 1896 (Laws of 1896, chap. 678) section 81 of the Transportation Corporations Law was amended so as to read:

" § 81. Every such corporation shall supply the authorities or any of the inhabitants of any city, town or village *through which the conduits or mains of such corporation may pass* * * * with pure and wholesome water at reasonable rates and cost," etc.

It would be an unreasonable construction of this statute, so amended as to compel the corporation passing through an intervening municipality with its pipes to furnish pure water to its authorities and inhabitants, to hold that it could select its route through such municipality without consulting the officers having charge of the streets.

While the right to pass through the streets of the intervening municipality is conferred by this statute, a fair construction leads to the conclusion that the legislature intended that its exercise is subject to the reasonable regulations and control of the local authorities, both as to route and manner of conducting the work.

The court would not be justified in assuming that the legislature intended to allow a water company, in passing through an intervening town where it is compelled to supply water, if required, to select its route as to streets in defiance of the duly constituted authorities, but in the adjoining town, where by permit it is to erect a water system, it is subject to such restrictions as to route and interference with the public streets as the local authorities may deem it proper to impose.

It follows that the provisions of the Transportation Corporations Law, as amended in 1896, do not authorize the plaintiff, even if lawfully within the city limits, to cross the twenty-nine streets in the city of Rochester without submitting to the reasonable supervision and control of the local authorities.

The finding of the trial court that the land at all of these street crossings is owned by the railroad company, subject only to the public use for the purposes of a street, does not help plaintiff, as the local authorities have the power to protect and regulate this public use.

Furthermore, it is a question whether the Central & Hudson could grant an easement to the plaintiff to lay its pipes over the entire strip of six miles, including the land involved in street crossings.

In *Albany Northern Railroad Co.* v. *Brownell* (24 N. Y. 345, 349) the court said : " Upon this my opinion is, that the railroad companies under the general act do not acquire the same unqualified title and right of disposition, to the real estate taken for the road and paid for according to the act, which individuals have in their lands.  The statute declares the effect of the proceedings which it authorizes to be that the company shall be entitled to enter upon, take possession of, and use the said land *for the purposes of its incorporation,* during the continuance of its ' corporate existence ; ' and it further declares that the land it thus appropriates shall be deemed to be acquired for public use."

It is not contended that the laying of plaintiff's mains over the entire strip was necessary to furnish the railroad company with water ; it is admitted a further object was to reach municipalities on the east of defendant.  A conveyance by the railroad company with the latter object in view is clearly *ultra vires.*

I have deemed it proper to construe the Transportation Corporations Law as claimed to be applicable to this case, although of the opinion that the charter of the city of Rochester and its amendments, read in connection with the White

charter, already cited, bar the entrance of plaintiff to the city of Rochester.

We have here one of the large cities of the second class, which has, at an expenditure of eleven millions of dollars, created a water system adequate to supplying the municipality and its inhabitants with pure and wholesome water for many years to come.

The question is whether the statutes, under which the city is exercising its governmental functions, permit it to found and maintain a municipal water system in the interests of the public safety and health free from outside competition or interference.

This court has decided that this system of water works was erected for the public benefit and is held for public purposes. (*City of Rochester* v. *Town of Rush*, 80 N. Y. 302.)

This system of water works was authorized by Laws of 1872, chapter 387, under which were created the original water commissioners of Rochester. The consolidated charter of Rochester, as amended, transferred the control of the water system to the executive board. The amendments of 1890 (Chap. 561, § 150) declare : " The executive board shall have control of the water works of said city, and of the construction of all extensions and additions, improvements and repairs of the same, and of furnishing the water to citizens, and the care and repair of said works, * * * and they may make such rules and regulations and establish such rates for the use of water as they may deem proper."

The act for the government of cities of the second class (White charter, Laws 1898, chap. 182) devolves the construction, maintenance, extension and repair of the city water works upon the commissioner of public works (section 109), and it is also made his duty (section 110), "when a vacancy shall occur, to appoint a superintendent of water works and to see that the city has an abundant supply of wholesome water for public and private use; to devise the plans and sources of water supply; to plan and supervise the distribution of water through the city; to protect it against

contamination ; to prescribe rules and regulations for its use, which, when ratified and approved by the common council, shall have the same force and effect as an ordinance by the common council enacted." The section goes on to give to the commissioner most ample powers in detail.

We have here the legislative intention, clearly expressed, that the city of Rochester is to have full and complete control of its system of water works even to devising the plans and sources of supply, which may be necessary in every city where the increase of population renders the existing supply insufficient.

There is but one fair and workable construction to be given these charters, and that is they make the municipal water system exclusive and free from all outside competition or interference.

If it should be held that these charters, when inconsistent with, are subject to the provisions of the Transportation Corporations Law, and if the judgment appealed from is affirmed, the right and obligation of plaintiff to furnish water to the authorities and inhabitants of Rochester instantly spring into existence. It thus becomes evident that the real question is not solely whether, under section 82 of the Transportation Corporations Law, the plaintiff has the right to pass through the intervening municipality of Rochester, but is the much broader question whether, under the amendment of section 81 of the above law, as already pointed out, the plaintiff can gain a foothold in the city of Rochester which will enable it to become a competitor of the municipal water system, notwithstanding the charter provisions already quoted and other stringent enactments contained therein, and in the ordinances as to the control of the water system and the public streets, which cannot, for lack of space, be quoted here in full.

The question, briefly stated, that dominates this case is, can the plaintiff, under any circumstances, furnish water to the authorities or inhabitants of the city of Rochester? I answer no, unless the city of Rochester permits it.

The charter of the city of Rochester and its amendments

constitute a special act, and are not repealed by the Transportation Corporations Law in the absence of an express or necessarily implied statement to that effect.

The White charter is special in nature as to the Transportation Corporations Law for it is confined to four cities. Independent of that, however, it is subsequent in date to the Transportation Corporations Law and, hence, is superior to the provisions of the latter when there is a necessary conflict.

4. There is a reason, independent of statutory enactments, why the city of Rochester should have exclusive and absolute control of its water system. It is necessarily vested with the police power as a part of its governmental functions.

The law of paramount necessity is involved and the maintenance of the municipal water system, untrammeled by competition or interference, is essential for sanitary purposes, the extinguishment of fires and the conservation of the public health by furnishing an abundant supply of pure and wholesome water for general consumption.

Chief Justice Redfield said: " The police power of the State extends to the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the State." (*Sharp* v. *Rutland & B. R. R. Co.*, 27 Vt. 149.)

A city or other political division of the state acts in a dual capacity; in business matters it is treated as a private person in suing and being sued, but when exercising the delegated sovereign power of the state it is judged by the same legal standard as the state itself. (*Maxmilian* v. *Mayor, etc., of New York*, 62 N. Y. 160; *Hughes* v. *County of Monroe*, 147 N. Y. 49; *Missano* v. *Mayor, etc., of New York*, 160 N. Y. 123.)

In *People ex rel. N. Y. Electric Lines Co.* v. *Squire* (107 N. Y. 593, 606), Ruger, Ch. J., in discussing the police power, said: " The right to exercise this power cannot be alienated, surrendered or abridged by the legislature by any grant, contract or delegation whatsoever, because it constitutes the exer-

cise of a governmental function, without which it would become powerless to protect the rights which it was specially designed to accomplish."

The police power is as broad and plenary as the taxing power. (*Kidd* v. *Pearson,* 128 U. S. 1.)

This court has held, as already pointed out, that the Rochester water works system is to be regarded as created for the public benefit, held for public purposes, and not subject to taxation. (*City of Rochester* v. *Town of Rush,* 80 N. Y. 302.) To subject this system to competition or interference would be to weaken and possibly destroy it.

5. In arriving at the conclusion that the plaintiff cannot lawfully extend its route through the city of Rochester, I have not adverted to the charter amendments of 1903, as I am of opinion they are not absolutely essential in reaching that result. The legislature of 1903 twice amended the charter of the city of Rochester, section 157 (Laws 1903, chap. 59 ; chap. 553). This section is headed : " Power over streets, *et cetera,* to extend water works." The first amendment added these words to the section : " No other person or corporation shall enter upon or excavate any road, street, highway or public place in the city of Rochester, for the purpose of laying down pipes for the conveyance of water, without the permission of the common council." This provision limited the exercise of power to the commissioner of public works. The amendment became operative March 19th, 1903.

The motion for a preliminary injunction herein was granted March 18th, 1903, but the order was not entered until two days later. The appellant claims the legislation precedes the injunction. The order entered related back to the day the motion was granted in writing, with a direction that the order be settled on two days' notice. (*Robinson* v. *Govers,* 138 N. Y. 425.) We do not regard this point as material.

The trial of this action, which resulted in the judgment making the preliminary injunction permanent, did not take place until the following April. This judgment was entered notwithstanding the declaration of the legislature that no other

person than the commissioner of public works could lay pipes in the streets for conveying water without the permission of the common council.

The force of this legislation was sought to be limited by the trial court in its opinion, but the application of a familiar canon of construction disposes of the matter, to the effect that in construing a statute resort may be had to the circumstances under which and the purposes for which a statute is passed. (*People ex rel. Onondaga County Savings Bank* v. *Butler*, 147 N. Y. 164; *Smith* v. *People*, 47 N. Y. 330.)

It was shown that the object of this legislation was to prevent the plaintiff extending its route through the city of Rochester, and the governor discloses the fact in his memorandum handed down when signing the bill.

The plaintiff was possessed of no franchise or vested rights authorizing it to extend its route through the city of Rochester, and the trial court should have heeded this latest expression of the legislative will.

The second amendment (Laws 1903, chap. 553) did not become operative until May 12th, 1903, and need not be considered at this time, although it is a more emphatic announcement of the legislative intention to make the water works system of the defendant exclusive.

6. Our attention is called to the fact that the trial court sought, in its judgment, to protect the defendant by stringent provisions as to the manner in which plaintiff should proceed with its work.

The plaintiff's contention was that it is authorized by law to lay out its route through the city of Rochester, and the local officials had no authority to interfere in any way. The defendant's position was that the plaintiff had acquired no franchise or vested rights in the premises and could not enter the city of Rochester without its permission. There is no middle ground lying between these two positions; the plaintiff could extend its route through the city of Rochester undisturbed, or it was powerless to do so unless the defendant gave its permission. The provisions in the judgment to which ref-

erence has been made were unauthorized, as the rights of the parties rest upon legislative enactment.

7. The trial court found (finding XII) that it was necessary for plaintiff to pass through the city of Rochester " in order to carry out the purposes of its incorporation and fulfill the contracts which it has made and assumed," etc.   This finding must be read, however, with another (finding XX), to the effect that it is a physical possibility to reach the territory on the east of the city of Rochester without laying any pipes within its territory, but the cost of construction would be materially greater.

8. It would seem quite impossible to read this record without reaching the conclusion that the real object of this plaintiff is to accomplish by indirection that which it could not secure otherwise, to wit, an entrance into the city of Rochester, for the purpose of ultimately serving that city and its inhabitants with water as a competitor of the existing municipal water works system.

I have previously pointed out that the plaintiff admits that whenever the question is presented (and we hold that it is presented now) it will insist that it can legally furnish water in the city of Rochester to the railroad companies, with which it has contracted, and to such adjoining owners as can be reached, without laying its pipes along the streets.

I have also called attention to the fact that if this route can be extended through the city of Rochester, under the provisions of the Transportation Corporations Law, as contended, then the amendment of section 81 in 1896 would enable the plaintiff to furnish water to the defendant and its inhabitants, subject only to the reasonable regulations and control of the local authorities.

The learned Appellate Division in its opinion says : " It is obvious, however, that the incidental privileges of supplying water to the Central Railroad Company and contiguous property owners within the city of Rochester was one of the chief inducements to the organization of the plaintiff, although that intention was not embodied in its certificate of incorporation

filed with the Secretary of State, and upon which its organization tax was accepted by the State."

The learned court, notwithstanding its expressed conviction that plaintiff was impelled by ulterior motives, failed to apprehend the full legal results of affirming the judgment of the Trial Term.

It may be further stated that a corporation having a capital stock of $2,500,000, and the power to issue bonds for a large sum, would not be justified in marketing such an amount of securities, if its real object was only to furnish water to the rural localities named in the certificate, with their small aggregate population.

The fact that the plaintiff has selected the corporate name of the Rochester & Lake Ontario Water Company is not without significance as bearing upon plaintiff's ulterior designs.

9. I have to say, in conclusion, that while there are many objections to the judgment below, the primary and controlling one is that the plaintiff sought an injunction to promote an illegal purpose, and, hence, its prayer for relief should have been denied.

The judgment of the Appellate Division and the Special Term should be reversed, with costs.

PARKER, Ch. J., GRAY and O'BRIEN, JJ., concur with HAIGHT, J.; MARTIN and VANN, JJ., concur with BARTLETT, J.

Judgment affirmed.