The City of Rochester, Respondent, *v.* Rochester and Lake Ontario Water Company et al., Appellants.

1. Water Company Incorporated under Transportation Corporations Law for Purpose of Supplying Water to Municipalities Adjacent to Another Municipality — Powers and Rights of Company. A water works company organized under the Transportation Corporations Law (L. 1890, ch. 566, §§ 80, 81, 82, as amd. by L. 1892, ch. 617, and L. 1894, ch. 230), for the purpose of supplying water to the towns and villages named in its certificate of incorporation, and from which it has obtained the permits required by section 80, has the power, under subdivision 2 of section 82, to lay and maintain its "water pipes in any streets or avenues or public places of an adjoining city, town or village to the city, town or village where such permit has been obtained;" but the provision of section 81, that "Every such corporation shall supply the authorities or any of the inhabitants of any city, town or village through which the conduits or mains of such corporation may pass or wherein such corporation may have organized, with pure and wholesome water at reasonable rates and cost," does not authorize the water company to furnish water to any of the inhabitants of an intervening municipality through which its conduits or mains may pass, unless it has obtained the consent of the authorities of that municipality. The Legislature could not have intended to give the local authorities in one municipality the power to grant a franchise in another. The statute contemplates the case of an intervening municipality, which, needing or desiring to obtain a supply of water from some company which had used its territory as a route for access to other municipalities, might offer a permit to the water company, whereupon it would become its duty to furnish water to such municipality and its inhabitants on reasonable terms, a duty which might be enforced by legal procedure.

2. Same — Water Company Maintaining Conduits for Water Through City upon Right of Way of Railroad Company — When City May Restrain Company from Furnishing Water to Railroad for Any Purpose Except for Railroad Uses. While a water company duly incorporated under the Transportation Corporations Law (L. 1890, ch. 566, as amd. by L. 1892, ch. 617, and L. 1894, ch. 230) for the purpose of supplying water to several towns and villages, part of which are separated from the others by the territory of the city of Rochester, may lay and maintain its water mains through the city, without the consent of the authorities thereof, on the right of way of a railroad running through the city, under and in consideration of an agreement to furnish the railroad company water at stipulated prices, and under such agreement may

furnish the railroad company with water for railroad purposes; the city, which has built and maintains a public water system for supplying water to its inhabitants and industries, is entitled under the statute (L. 1903, ch. 553), prohibiting any person or corporation, except the city of Rochester, from furnishing or distributing water within such city except under a franchise granted by the common council thereof, to a permanent injunction restraining the water company from supplying water to a block of buildings owned by the railroad company not used for railroad purposes, but leased to tenants.

3. When Statute Prohibiting Any Person or Corporation, Except City, from Furnishing Water Within That City Effective Against Water Company Previously Incorporated. The fact that the statute (L. 1903, ch. 553) was not enacted until after the water company was incorporated, in 1902, does not render it inoperative and ineffectual against the company, where, at the time of its enactment, the water company had acquired, either under the Transportation Corporations Law or otherwise, no valid franchise or vested right to furnish water to consumers along the line of its mains in the city of Rochester, except its right, under its contract with the railroad company, to furnish that company with all the water that it might require for railroad purposes.

*City of Rochester* v. *R. & L. O. Water Co.*, 114 App. Div. 907, modified.

(Argued June 3, 1907; decided October 8, 1907.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 21, 1906, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Albert H. Harris* for appellants. The city of Rochester has no monopoly entitling it alone to supply water. (*C. R. B. Co.* v. *W. B. Co.*, 11 Pet. 420; *C. B. Co.* v. *B. B. Co.*, 27 N. Y. 87; *P. R. R. Co.* v. *Canal Comrs.*, 21 Penn. St. 22; *R. R. Co.* v. *L. R. R. Co.*, 13 How. Pr. 71; *S. W. Co.* v. *City of Syracuse*, 116 N. Y. 167; *Matter of City of Brooklyn*, 143 N. Y. 596; *S. W. W. Co.* v. *Vil. of Skaneateles*, 161 N. Y. 154; Cooley on Const. Lim. [7th ed.] 271; *Wells* v. *Town of Salina*, 119 N. Y. 280; *Minturn* v. *La Rue*, 23 How. Pr. 435; *State* v. *C. G. Co.*, 18 Ohio St. 262.) The charter of the water company gives it the right

to furnish water within the city to the defendant the railroad
company or to any others whom the water company may be able
to reach without entering upon the public streets. (*R. & L.
O. W. Co.* v. *City of Rochester*, 84 App. Div. 71; *People* v. *U.
Ins. Co*, 15 Johns. 382; *Ontario Bank* v. *Bunnell*, 10 Wend.
193; Morawetz on Corp. § 1083.)   The right of the railroad
companies to buy water from the water company follows from
their right to secure water by the right of eminent domain.
(L. 1890, ch. 565, § 7, subd. 4.)   The statutes, chapters 59
and 553 of the Laws of 1903, cannot affect the right of
the water company to furnish water under its contracts
with the railroad companies. (*R. & L. O. W. Co.* v. *City
of Rochester*, 176 N. Y. 50.)   The right of the water com-
pany to furnish water to all customers whom it can reach
without entering upon the city streets is not abridged by the
statutes of 1903. (*People* v. *Hills*, 35 N. Y. 449; *People* v.
*O'Brien*, 38 N. Y. 193; *Huber* v. *People*, 49 N. Y. 132;
*Matter of N. Y. & L. I. B. Co.*, 148 N. Y. 540; *Tingue* v.
*Vil. of Portchester*, 101 N. Y. 294; *People* v. *O'Brien*, 111
N. Y. 1; *People* v. *Marx*, 99 N. Y. 377; *People* v. *Gilson*,
109 N. Y. 389; *People ex rel. Tyroler* v. *Warden*, 157 N. Y.
116.)

*W. W. Webb* for respondent.   The Transportation Corpora-
tions Law gives no authority to a corporation created under it
to furnish or distribute water to any city or the inhabitants
thereof, unless it has first obtained a permit from the authori-
ties of such city. (*Matter of City of Brooklyn*, 143 N. Y.
596; *R. & L. O. W. Co.* v. *City of Rochester*, 84 App. Div.
71; *People ex rel. Starkweather* v. *Gaul*, 44 Barb. 98;
*People ex rel. Savings Bank* v. *Butler*, 147 N. Y. 164; *Peo-
ple* v. *Broadway R. R. Co.*, 126 N. Y. 29; *Trustees* v. *Vail*,
151 N. Y. 463; *Pearsall* v. *G. N. Ry. Co.*, 161 U. S. 646.)
The city has a right to maintain this action, even if it has not
an exclusive franchise to sell water within the city. (*Mayor,
etc.*, v. *Starin*, 106 N. Y. 1; *B. S. T. Co.* v. *City of Brooklyn*,
78 N. Y. 524.)   Before the defendant acquired any right of

franchise to sell or distribute any water within the city of Rochester an act was passed by the legislature prohibiting the distribution of water within the city of Rochester except under a franchise granted by the common council. (L. 1903, ch. 553; *R. & L. O. W. Co.* v. *City of Rochester*, 176 N. Y. 36; *Parfitt* v. *Ferguson*, 159 N. Y. 111; *Pratt Institute* v. *City of New York*, 183 N. Y. 151; *Hinckley* v. *Schwarzschild*, 107 App. Div. 470; *People* v. *Cook*, 148 U. S. 397; *Stanislaus County* v. *S. J., etc., Co.*, 192 U. S. 201; *People ex rel. Vil. of Brockport* v. *Sutphin*, 166 N. Y. 163; *Matter of City of Brooklyn*, 143 N. Y. 596.) The White charter, which was passed after the Transportation Corporations Law, gave to the city authorities the right to grant all franchises in the city, and, therefore, the water company could obtain no franchise to sell water in the city except by ordinance of the common council of the city of Rochester. (*Pearsall* v. *G. N. R. Co.*, 161 U. S. 646; *People ex rel. Dunn* v. *Ham*, 166 N. Y. 477; *Pryor* v. *City of Rochester*, 166 N. Y. 548; *Mayor* v. *Starin*, 106 N. Y. 1.) The city of Rochester is given by its charter exclusive right to distribute water within its limits. This charter was passed subsequent to the Transportation Corporations Law and its provisions are superior thereto. (L. 1880, ch. 14, § 150; L. 1890, ch. 561; L. 1898, ch. 182, § 110; L. 1899, ch. 581; *People* v. *B. R. R. Co.*, 126 N. Y. 29; *F. Ins. Co.* v. *Vil. of Keeseville*, 148 N. Y. 46.)

Cullen, Ch. J.    This action is brought by the city of Rochester to restrain the defendant water company from furnishing, distributing or selling water within the limits of the city of Rochester, especially to the defendant railroad company. The water company was incorporated on the 30th day of December, 1902, under the Transportation Corporations Law (Ch. 566, Laws 1890, amended ch. 617, Laws 1892) for the purpose of supplying water to the villages of Brighton and Fairport and the towns of Greece, Gates and Brighton in the county of Monroe, and with its certificate of incorporation were filed the consents of the local authorities of said villages and towns,

as required by section 80 of said law. The plan or scheme of operation adopted by said water company was to take its supply of water from Lake Ontario and lay its pipes or conduits thence southerly through the towns of Greece and Gates to the city of Rochester; through the city of Rochester to the town of Brighton, and thence to the village of Fairport. The railroad company is the owner and possessed of a right of way extending through the entire limits of the city of Rochester. About the time of its incorporation the water company, through assignment, obtained from the railroad company the right to lay its mains through the city of Rochester upon the right of way of the latter company, on an agreement to furnish said railroad company water at certain stipulated prices. The railroad right of way is intersected by many of the city streets. When the water company sought to lay its mains through Rochester on the railroad right of way the city authorities prevented it. Thereupon the water company brought an action to restrain the city and its officers from obstructing or interfering with the company in laying its mains. The city denied that the water company had acquired by its incorporation and the consents attached thereto any authority to enter within the limits of the city of Rochester, and also contended that by two acts of the legislature passed in 1903 (Ch. 59 and ch. 553, Laws 1903) the company was expressly prohibited from laying its mains within the city limits. The water company was successful in its suit, which was brought on appeal to this court, and the judgment of the lower courts affirmed. (*Rochester & Lake Ontario Water Company* v. *City of Rochester*, 176 N. Y. 36.) This court held, through HAIGHT, J., that the Transportation Corporations Law, by subdivision 2, section 82, authorized the company to lay its mains through the city of Rochester so as to gain access to the town of Brighton and the village of Fairport, from the authorities of both of which it had the statutory consents, and that as the company had obtained such consents and commenced the construction of its work it had acquired thereby a franchise which subsequent legislation could not destroy. On the argument of the appeal and in the minority opinion of

this court there was discussed to some extent the claim of the water company that it had the right to furnish water to consumers along the line of its mains in the city of Rochester. That claim this court expressly refused to pass upon, but, as already said, placed its decision upon the ground that the company had the right to lay mains through Rochester to reach the town and village beyond. The question thus left open is the one now presented to us, and presented to us in a double aspect, for the railroad company is the owner of a block of buildings in the city of Rochester not used for railroad purposes but leased to private tenants, and the water company is now furnishing water to its co-defendant, the railroad company, not only for railroad purposes but for use in private buildings. In this action the Special Term held that the water company was not authorized to furnish water to the railroad company for any purpose. That judgment has been affirmed by the Appellate Division, by a divided court, and an appeal is now brought to this court.

So far as is involved the right of the railroad company to purchase and receive from the water company all the water that it may require for railroad purposes, we are quite clear that the decisions of the courts below were erroneous. Whether the water company has a right to sell water to consumers in the city of Rochester generally or not, the railroad company is by the express terms of subdivision 4, section 7 of the Railroad Law (Laws 1892, ch. 690) empowered to acquire a supply of water that may be necessary for its uses and purposes and to build or lay aqueducts or pipes for the purpose of conveying such water and to condemn any lands that may be necessary therefor. Therefore, that company could have obtained a supply of water from Lake Ontario, or any other locality outside the city of Rochester, and carried the supply through a conduit on the very line which the water company has adopted. The water company, as determined by our previous decision, had the right to maintain its conduits for the purpose of carrying water to the towns beyond the city. So long as neither railroad company nor water com-

pany exceeded its franchise rights the question of what structure should be employed for the exercise of those rights was a matter that solely concerned the two companies. It was not at all necessary that each company should build an independent conduit line. The parties could agree to construct a single conduit to be used in common by both, or either might agree to build it and the other pay for its use. This is exactly the effect of the agreement between the two companies. The way in which it is done or how the payments are made is immaterial. The railroad contributes its right of way, the water company builds the conduit line, and the balance of expense or contribution between the two is adjusted by the railroad company agreeing to pay so much for the water it may use. The delivery of water to the railroad company under this contract is, therefore, authorized under the railroad company's charter, regardless of our determination as to what may be the water company's rights.

The block of private buildings owned by the railroad company, but in no sense used or held for public purposes, presents, however, an entirely different question. If justified it must be justified solely under the water company's charter rights or its property rights. The question is one of great importance to the plaintiff, though but a small sum is involved in this case, for at great expense it has acquired a water supply and constructed a plant for the purpose of furnishing water to its inhabitants. If, as claimed by the appellant water company, it has the right to furnish water to all consumers in Rochester along the line of its mains, a competition will ensue by which the city may be deprived of a very substantial part of the revenue on which it relies for the maintenance of its water system, and for the payment of the interest upon the debt incurred in the construction of that system. If the water company should establish a lower rate than that fixed by the city it is apparent that the city would either lose as customers all consumers along the line of the water company's mains or would be compelled to reduce its charges for water throughout the whole city, for,

even if not illegal, it would be obviously impracticable to charge one set of customers one rate and another set of customers a higher rate.   By chapter 553 of the Laws of 1903, already referred to, it was enacted that no person or corporation should furnish or distribute water within the city of Rochester, from pipes, mains or conduits, except under a franchise granted by an ordinance of the common council, and that any such right, license or permission to any person or corporation, other than the city of Rochester, should thereby be repealed and revoked.   If, at the time of the enactment of this law, the water company had acquired a valid franchise to furnish water to consumers along the line of its mains, then, under our decision in the previous litigation between these parties, we may assume that the statute would be inoperative and ineffectual as against that appellant.   We are, therefore, brought to a consideration of the construction and interpretation to be given to the various sections of the Transportation Corporations Law under which the appellant water company was organized, and by which its franchise was conferred. Before entering upon that discussion, however, it may be well to answer the argument of the appellant water company, that it is exercising only a property right as distinguished from a franchise right.   It is urged that as it is the owner of the water in the main, and can furnish water to consumers adjacent to its conduit without entering upon the streets or public places of the city, it is exercising merely a right which every owner of property possesses, to sell his property to whomever will buy. It is insisted that if the owner of land should, upon his property sink a well or find a spring, he may sell the water to an adjacent landowner, and deliver it by a pipe or conduit, so long as he does not seek to enter upon public property, and that no law can deprive him of that right.   This proposition may be conceded, but it has no relevancy to the present case.   Neither water company nor railroad company obtained the water from the right of way.   It is found in the center of the block on private land, not because it is a product of that land, but because it has been brought there from a distant

source, through a pipe line, which the water company was enabled to construct across the street solely by virtue of the franchise granted to it. There is no analogy between such a case and that of a private owner finding water on his land and furnishing it to his neighbor without having to ask the privilege from any government, local or state.

We now return to a consideration of the Transportation Corporations Law. Section 80 provides for the incorporation of water works corporations for the purpose of supplying water to any of the cities, towns or villages in this state and to the inhabitants thereof. But to authorize the filing of the certificate there must be annexed thereto a permit signed and acknowledged by the local authorities of the municipality to be supplied. Section 81, as amended by chapter 230 of the Laws of 1894, enacts: " Every such corporation shall supply the authorities or any of the inhabitants of any city, town or village through which the conduits or mains of such corporation may pass, or wherein such corporations may have organized with pure and wholesome water at reasonable rates and cost," and then provides that contracts may be made between such municipal officers and the company relative to the terms and conditions on which the water shall be supplied. By subdivision 2 of section 82 it is enacted that every such corporation shall have the power " to lay their water pipes in any streets or avenues or public places of an adjoining city, town or village, to the city, town or village where such permit has been obtained." It was upon this last provision that the decision in the case of *Rochester & Lake Ontario Water Company* v. *City of Rochester (supra)* proceeded. It was there said by Judge Haight, writing for the majority of the court: " The purpose of this provision of the statute is manifest. The legislature did not propose that one municipality, which happened to be more favorably situated, should have the power to prevent another and adjoining municipality from obtaining water, where it becomes necessary to pass through the territory of such adjoining municipality to reach the source of supply. This was settled in the

case of *Village of Pelham Manor* v. *New Rochelle Water Company* (143 N. Y. 532)." In the earlier case the village of Pelham Manor sought to restrain the water company, which was authorized to supply water to the village of New Rochelle, from connecting two dead ends of pipes along a highway in Pelham Manor. This court held that the section last cited empowered the company to lay its main, though in an adjoining village, because the trial court found that the connection was necessary to properly furnish and distribute the water in New Rochelle. Judge O'BRIEN there said : " So long as the defendant was without power to add to its revenues by furnishing water to the plaintiff, or any of its inhabitants, no great mischief is to be apprehended from any extensive use of the streets by the defendant. But the legislature evidently anticipated that a water company in performance of its functions of supplying the town and every part of it, which granted the permit, with water, might, for some reason, find it necessary to cross the boundary line of an adjoining town and use its highways, not for the purpose of supplying that town, but for the purpose of properly and effectively executing the purpose of its creation." Therefore, no franchise to sell and distribute water in a town in which the company has not obtained a permit can be predicated on the right given in this section to lay mains in an adjoining town, and we understand that the claim of the appellants is based not on this section, but on section 81. As already quoted, that section provides : " Every such corporation shall supply the authorities or any of the inhabitants of any city, town or village through which the conduits or mains of such corporation may pass, or wherein such corporations may have organized, with pure and wholesome water at reasonable rates and cost." This section as originally enacted read : " Every such corporation shall supply the authorities or inhabitants of any town or village where they have been organized with pure and wholesome water," etc. By chapter 617 of the Laws of 1892, the section was amended so as to read in its present form. It is contended that by the addition of the language

"through which the conduits or mains of such corporation may pass" the water companies were given the additional franchise to furnish water along the line of their mains in municipalities in which they had obtained no consent. We think such a construction inadmissible. It may well be doubted whether the section confers a franchise at all. It seems rather to impose a duty. However this may be, we are of opinion that the whole scheme of the statute is opposed to the construction for which the appellants contend. It is to be observed first that no valid incorporation of a water works company can be effected unless the consent of some municipality is obtained. The certificate of incorporation must state the municipalities to be furnished with water, and there must be annexed to that certificate "and as a part thereof" the permits from the local authorities "authorizing the formation of such corporation for the purpose of supplying such village or town with water." Despite the amendment of 1892 the legislature cannot have intended to give to the local authorities in one municipality power to grant a franchise in another municipality. In his opinion, in the first litigation between these parties, Judge HAIGHT further said : "We fully recognize the justice of the provision which permits the laying of water pipes through an adjoining municipality, and thus preventing such municipality from depriving its neighbors from receiving a supply of water, where such municipality happens to intervene between the source of supply and the place of distribution.  *  *  *  We think, however, that the legislature might properly have placed some restriction upon the use of the streets in cities, and possibly in villages, that should be made by water companies ; that the city or village authorities should be given some voice as to the streets that should be used, and the place and manner in which the pipes should be laid therein ; and that it should not be left entirely to the judgment and discretion of the officers of the water company to place its pipes wherever they please, without regard to the wishes or reasons of the officers of the city who may desire to have them placed elsewhere." The evils pointed out by Judge HAIGHT that

might result from leaving to the water company the unrestricted selection of its route through any intervening city or village are sufficiently great, but they would be immeasurably increased if we were to interpret the statute as authorizing the company to furnish water to consumers along the line of its mains in the intervening municipality. If such were the law then the company would not select the best and most available route for conveying the water to the municipality it had contracted to furnish, but one on which it might pick up the most trade and the most valuable custom in the intervening municipality for which it had no permit, and a permit from an insignificant village or town might be made the pretense for invading the territory of a large city. The appellants in their argument on this appeal limit their claim to furnish water to such consumers as they may be able to reach without going through the public streets. The language of the statute does not seem to admit of this limitation in its construction. The statute reads: "Every such corporation shall supply the authorities or any of the inhabitants of any city, town or village through which the conduits or mains of such corporation may pass." There is no limitation to inhabitants, the property of whom lies adjacent to or along the line of the company's mains. Surely the mains of the appellant water company pass through the city of Rochester, and if by this section it obtained a franchise to furnish any of the inhabitants of that city with water, we do not well see why it may not invade the whole territory of the city. In fact, any construction of the provision of section 81 which would confer upon a water company organized to supply water to an adjacent town any franchise to supply water in an intervening town, must lead to most incongruous and unreasonable results, while on the other hand the section may easily be given a natural and reasonable effect. The statute contemplates the case of an intervening municipality which, having either no water supply, or an insufficient one, might desire to obtain a supply from some company which had used its territory as a route for access to other municipalities. In such case the authorities of the intervening municipality might offer a per-

mit to the water company, and thereupon it would become the duty of the company to contract to furnish water to such municipality and its inhabitants on reasonable terms, a duty which might be enforced by legal procedure.   Until, however, such permit is obtained the water company obtains no rights to furnish water in the intervening municipality.

As the appellant water company had at the time of the enactment of chapter 553 of the Laws of 1903, neither franchise nor property right to sell and furnish its water in the city of Rochester, that statute was valid.   It practically gave to the city of Rochester within its limits a monopoly of the sale of water by any system of public distribution.   It had, therefore, sufficient standing to maintain this action.   (*Mayor, etc., of N. Y.* v. *Starin,* 106 N. Y. 1; *Same* v. *New Jersey Steamboat Navigation Co.,* Id. 28.)   Indeed, on this subject Judge HAIGHT said in *Rochester & Lake Ontario Water Co.* v. *City of Rochester (supra)*: "Under the statute, as we have seen, the company has the right to run its mains through the city, in order to comply with the purposes of its grant. When it attempts to supply water to the inhabitants of the city within its territorial limits, its power to do so may then be questioned by the municipality, and the courts may then be called upon to determine the extent of its powers in that regard."

The judgments of the Special Term and of the Appellate Division should be modified so as to except from the injunction therein granted such water as the appellant The New York Central and Hudson River Railroad Company may take for use for railroad purposes, and as modified affirmed, without costs of this appeal to either party.

EDWARD T. BARTLETT, HAIGHT, VANN, WILLARD BARTLETT and HISCOCK, JJ., concur; GRAY, J., not sitting.

Judgments accordingly.