(56 Misc. Rep. 133.)

HUDSON RIVER TELEPHONE CO. v. FORRESTAL.

(Supreme Court, Special Term, Dutchess County. November 2, 1907.)

1. BOUNDARIES—HIGHWAYS—DESCRIPTION.
    A deed described defendant's land as beginning on the northerly side of W. Ave., at the southeasterly corner of a certain lot, and running from thence northerly about 125 feet, thence westerly about 470 feet, thence southwesterly 175 feet, to W. Ave., thence easterly along W. Ave. about 470 feet, to the place of beginning. *Held*, that defendant, under such description, took title to the center of W. Ave.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Boundaries, § 123.]

2. EMINENT DOMAIN—TELEPHONES—VILLAGE STREETS—RIGHTS.
    A telephone company holding a village franchise is not authorized to occupy a street, the title to which is in the abutting owner, against his wishes, without having acquired the right by condemnation proceedings.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 312.]

Action by the Hudson River Telephone Company against Mary A. Forrestal, in which defendant pleaded a counterclaim. Judgment for defendant on the counterclaim.

James G. Meyer, for plaintiff.
John J. Donnolley (Samuel K. Phillips, of counsel), for defendant.

MORSCHAUSER, J. The plaintiff, a domestic corporation, by its complaint alleges: That the defendant is the owner of a certain piece of real estate situate on the northerly side of Wiltsie avenue, in the village of Fishkill Landing, this county; that it had permission from said village to construct, maintain, and operate its lines and erect poles on public streets in said village; that it did erect such poles, and the defendant, by her servant and agent, cut down two of said telephone poles and the ropes and wires attached thereto and interfered with the operation of said business; and that the plaintiff was damaged in the sum of one hundred dollars, for which it asks judgment, and asks that the

defendant, and her agent, be restrained from injuring, or in any manner interfering with, the poles, wires, and property of the defendant.

The defendant, by her answer, admits the several allegations of plaintiff's complaint, except paragraph "Nine." In answer thereto, she alleges that she is seised in fee of the locus in quo, and by virtue thereof did the acts complained of, doing no more harm than was necessary. The answer contains a counterclaim. It alleges: That the defendant is the owner of premises situated in said village and located on the north side of Wiltsie avenue and described as follows:

"Beginning on the northerly side of Wiltsie avenue at the southwesterly corner of lot formerly of Henry Jones, and running from thence northerly along said Jones line about one hundred twenty-five feet to lands of Elizabeth Van Amburgh; thence westerly along her line and the land of T. S. Lester, Murty Gilgan and others about four hundred and seventy feet to Cliff street; thence southwesterly along Cliff street one hundred and seventy-five feet to Wiltsie avenue; thence easterly along Wiltsie avenue about four hundred seventy feet—to said Jones land, the place of beginning."

And that the plaintiff wrongfully and without the legal right entered upon and took possession with a large number of men and dug a hole and placed a pole therein and despoiled trees and roots in front of her premises, and that defendant, claiming to be the owner in fee and entitled to the premises, was damaged by the wrongful acts of the plaintiff in the sum of $100. That the value of the use and occupation of said street by said plaintiff was $50 per year. That the placing of the poles was done without leave of the defendant, and the defendant asks for damages and the recovery and possession of lands and for a judgment forbidding the plaintiff from interfering with the lands of the defendant. The plaintiff replied with a general denial. The poles erected by plaintiff, and cut down by defendant's agent, were on the north side of Wiltsie avenue, and were upon the sidewalk, near the gutter in front of the premises above described.

I am satisfied that this case falls within the decision of Van Winkle v. Van Winkle, 184 N. Y. 203, 77 N. E. 35:

"The commencement of the description of premises at a corner or a point particularly specified is always considered important, for ordinarily more attention is given by the parties to the locating of the point of commencement of the description than to the other points; but it is not conclusive, and where it is inconsistent with the other lines described, which show an intent to include or exclude the fee of the highway, effect will be given such intent, and where there is ambiguity with reference to the description or to the commencing point, or where there is doubt with reference to the intent of the grantor, the presumption that the fee was intended to pass will prevail, for in such case the construction must be most favorable to the grantee. Where a survey gives the dimensions and quantity of the land conveyed, exclusive of the public way, it does not operate to destroy the presumption that the fee to the roadbed was conveyed, for the reason that such dimensions and quantity of the usable land is ordinarily deemed by the purchaser of paramount importance in determining its availability for the uses designed by him. Where a deed gives the boundaries of the land conveyed by courses and distances, without mentioning a street by which the same is bounded on one side, but where it appears that the distance given does in fact carry the boundary to the street and along it, it is the same as though the boundary were described as running to the street and along the same, thus extending the title to the center; and where a line runs to a stake or to a mark upon a fence or a tree upon the bank of a stream or upon the side of a highway, and thence along

the meandering of the stream or along the highway, the stake, mark, or tree will be deemed to indicate the place of the line, and not the end thereof, by reason of the difficulty of maintaining a visible object marking the corner in the middle of a stream or in the roadbed of a highway, thus vesting the title in the grantee"—citing a number of authorities.

The description of the land in the conveyance to defendant, and the descriptions, in the conveyances of the parcels, lying on the east of defendant's premises from the common grantor, satisfy me that defendant's title extends to the center of Wiltsie avenue. If I am right in this, and the plaintiff is the owner of the fee of the street, subject only to the public right of way, then I do not think the plaintiff can erect its poles in front of the defendant's premises in said street without acquiring the right by condemnation, although it has had permission from the village authorities to do so. See Eels v. American Telephone & Telegraph Company, 143 N. Y. 133, 38 N. E. 202, 25 L. R. A. 640.

In Powers v. State Line Telephone Company, 116 App. Div. 738, 102 N. Y. Supp. 34, Mr. Justice Rich said:

"The record presents the question whether a telephone company, holding a franchise from a village authorizing the placing of poles and wires in its streets for the purpose of conducting its business, can occupy land forming part of a public street, owned by a citizen and subject only to those easements arising from a dedication of the street for those purposes, without the consent of the owner and against his wishes, without having acquired such right by condemnation proceedings. We prefer to hold that this cannot be done. In Eels v. American Telephone & Telegraph Co., 143 N. Y. 133, 138, 38 N. E. 202, 203, 25 L. R. A. 640, Peckham, J., in writing for the court, says: 'We think neither the state nor its corporation can appropriate any portion of the public highway permanently to its own special, continuous, and exclusive use by setting up poles therein, although the purpose to which they are to be applied is to string wires thereon, and thus to transmit messages for all the public at a reasonable compensation. It may be at once admitted that the purpose is a public one, although for the private gain of a corporation; but the Constitution provides that private property shall not be taken for public use without compensation to the owner. Where land is dedicated or taken for a public highway, the question is: What are the uses implied in such dedication or taking? Primarily there can be no doubt that the use is for passage over the highway. The title to the fee of the highway generally remains in the adjoining owner, and he retains the ownership of the land, subject only to the public easement. If this easement do not include the right of a telegraph company to permanently appropriate any portion of the highway, however small it may be, to its own special, continuous, and exclusive use, then the defendant herein has no defense to the plaintiff's claim. Although the purpose of a public highway is for the passage of the public, it may be conceded that the land forming such highway was not taken for the purpose of enabling the public to pass over it only in the then known vehicles, or for using it in the then known methods for the conveyance of property or the transmission of intelligence. Still the primary law of the highway is motion, and whatever vehicles are used, or whatever method of transmission of intelligence is adopted, the vehicle must move and the intelligence be transmitted by some moving body which must pass along the highway, either on or over, or perhaps under it, but it cannot permanently appropriate any part of it.' * * * Powers v. State Line Telephone Company, 116 App. Div. 739, 102 N. Y. Supp. 36. Each case must be determined by the condition and necessity shown to exist."

The evidence does not disclose the necessity requiring the application of a different rule than was established by the Court of Appeals in the Eels Case. The village has a population of about 4,000 inhabitants. While geographically the location of the defendant's premises

is nearly in the center of the village, nevertheless, it is not there thickly populated. It is purely a rural part of the village. It was stipulated on the trial that, either party recovering, the damages were to be fixed at $57.

The defendant is entitled to judgment dismissing plaintiff's complaint, and for judgment for the amount of $57, with costs. Settle findings on notice.