(140 App. Div. 206.)

RICHARDS et al. v. CITIZENS' WATER SUPPLY CO. OF NEWTOWN et al.

(Supreme Court, Appellate Division, Second Department.   October 20, 1910.)

1. EMINENT DOMAIN (§ 119*)—ADDITIONAL SERVITUDE ON HIGHWAY.

In all highways, rural or urban, the public easement as against a claim of additional servitude by abutting owners is primarily for passage over its surface, such primary easement in urban highways being enlarged to cover a number of public uses not connected necessarily with the exercise of the right of passage, but growing out of the public necessities attending the growth in population.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*]

2. EMINENT DOMAIN (§ 119*)—AID TO TRAVEL—ADDITIONAL BURDENS.

Means of preserving and facilitating travel over a highway adopted by public authorities, such as sprinkling, watering places for animals or travelers, or water pipes and hydrants, do not impose a new burden upon the land, even in case of a rural highway, and the courts will not inquire into the necessity of the use, leaving that as a question to be determined entirely for those charged by law with the care and control of the highway.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*]

3. EMINENT DOMAIN (§ 119*)—EXTENSION OF USE—ADDITIONAL BURDEN.

If a street or highway has been subjected to a use primarily a street or highway use, the extension of such use to purposes municipal in nature, but not connected directly with the right of passage, does not impose an additional burden on the land subject to the public easement of travel, whether the highway be rural or urban, but, if the use be independent of the right of passage, it cannot be considered a street use, and as to urban streets or rural highways, when the fee of the road is in the abutting owner, it imposes a new burden beyond the public easement which requires compensation to the owners of the fee.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*]

4. EMINENT DOMAIN (§ 119*)—ADDITIONAL SERVITUDE — URBAN EASEMENTS—LAYING OF WATER MAINS.

The laying of water mains in a public highway is a proper exercise of an urban easement, which imposes no new burden upon the fee of an urban street.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 313; Dec. Dig. § 119.*]

5. EMINENT DOMAIN (§ 119*)—EXTENT OF PUBLIC EASEMENTS—RURAL AND URBAN HIGHWAYS.

In respect to the question of additional servitude on a highway there is a clear distinction between rural and urban highways as to the extent of public easements therein.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*]

6. EMINENT DOMAIN (§ 119*)—ADDITIONAL SERVITUDE ON HIGHWAY—NATURE OF PUBLIC EASEMENT.

Black Stump road is a public road in the Third Ward of the borough of Queens, running east and west, and about 2¼ miles in length, with farming lands on either side throughout its entire length, on which are residing not more than 150 people.   The main use of the road is by farmers and their servants engaged in truck gardening or flower growing in the neighborhood.   *Held*, that the road in view of its position, notwithstand-

ing its physical characteristics, is to be deemed an urban highway in its legal relation to public easements for the benefit of New York City at large, or any locality in it requiring such use.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*]

7. WATERS AND WATER COURSES (§ 192*)—USE OF STREET—PERMIT—EFFECT.
Where a water company obtains no franchise to use a city street from the city of New York as required by the charter, permits from the president of the borough, the deputy commissioner of water supply in the borough, and the commissioner of public works in such borough to lay its mains along the highway carry with them no legal right of occupancy.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 279; Dec. Dig. § 192.*]

8. CONSTITUTIONAL LAW (§ 101*)—VESTED RIGHTS — FRANCHISES — RIGHT TO USE STREET.
A water company was incorporated in 1893, and obtained from the authorities of the town of N. permission to supply water in that town, as provided by Transportation Corporations Law (Laws 1890, c. 566) § 80, as amended by Laws 1892, c. 617, prior to its amendment in 1905. Section 82 of the transportation corporations law in prescribing the powers of a corporation formed under section 80 thereof provided that every such corporation should have power in addition to laying pipes in the town for which it was organized to supply water, to lay water pipes in any street or public place of an adjoining town to the town where such permit had been obtained. Laws 1905, c. 210, amended section 82 by adding the provision that such right in an adjoining city should be subject to the permission of the local authorities thereof, and upon such conditions as they might prescribe. The water company laid its pipes in the town of N., and, after the amendment of 1905, to remedy a shortage in its water supply, procured a new source of supply in an adjoining town, and laid a pipe from such source through a public highway of that town to connect with its original main in the town of N. *Held*, that the powers granted by section 82 prior to its amendment did not become vested property of the water company beyond legislative modification as to the main laid in the adjoining town after the amendment, so that the water company was without authority to lay its main without obtaining the permission of the local authorities, and complying with the conditions which they might prescribe.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 209–211; Dec. Dig. § 101.*]

9. MUNICIPAL CORPORATIONS (§§ 680, 681*)—USE OF STREETS BY WATER COMPANY—PERMISSION—POWERS OF PARTICULAR OFFICERS.
Transportation Corporations Law (Laws 1890, c. 566) § 82, as amended by Laws 1905, c. 210, provides that a water company, in addition to laying pipes in the town for which it was organized to supply water, may lay water pipes in the streets of an adjoining town, provided that such right in an adjoining town shall be subject to permission of the local authorities thereof. *Held* that, where a company was organized to supply water in a town subsequently the Second ward of the borough of Queens, a legal permission to lay mains in the streets of an adjoining town, comprising the Third ward of the borough, given after organization of the city of Greater New York, amounting to a franchise right from the city of New York, could not be given by the president of the borough, the deputy commissioner of water supply, nor the commissioner of public works in the borough, nor by the commissioner of water supply of the city of New York.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1460; Dec. Dig. §§ 680, 681.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**10. WATERS AND WATER COURSES (§ 192\*)—RIGHT OF WATER COMPANY TO USE STREET.**

Greater New York Charter (Laws 1901, c. 466) § 516, provides that all persons acting under authority of the city of New York shall have the right to use the ground under any street within the state for the introducing of water into the city. *Held*, that a private water company contracting with the city to deliver a certain amount of water at a stated place in the city where a part of the water conveyed to the main was used to fulfill its franchise duties to others was not acting under authority of the city within the meaning of the charter.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 279; Dec. Dig. § 192.\*]

Appeal from Special Term, Queens County.

Action by Robert K. Richards and another, individually and as executors of Mary W. Richards, against the Citizens' Water Supply Company of Newtown and another. Judgment of dismissal, and plaintiffs appeal. Reversed for new trial.

See, also, 104 N. Y. Supp. 927.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and CARR, JJ.

Richmond Weed, for appellants.

Edward W. Hatch (Frank B. Church and Ashley T. Cole, on the brief), for respondents.

CARR, J. The plaintiffs are the owners of a large tract of farming land, in the Third ward of the borough of Queens, which abuts upon a public road known as the "Black Stump road," for a distance of 2,249 feet, to the center of which road they have title in fee simple absolute, subject to the highway easements. The Third ward of the borough of Queens prior to January 1, 1898, was the town of Flushing. On the last-mentioned date, it became a part of the city of New York by virtue of the provisions of the Greater New York charter. The Black Stump road is a highway running east and west and about 2¼ miles in length, with farming lands on either side throughout its entire length. In 1897 it was partly macadamized by the county of Queens as a county road. In September, 1906, the defendant water supply company entered upon the northerly side of the road, immediately abutting the plaintiffs' land, excavated its surface, and laid therein a water main of iron pipe 36 inches in diameter, along the entire road frontage of the plaintiffs' land. This main was so constructed as to be permanent in its character, and at spaces 500 feet apart along the entire length of the main were installed surface hydrants connected with the underground pipes. This entry was made and the main so constructed without any license from the plaintiffs and without any franchise from the city of New York and without any condemnation proceedings to acquire any easement in the soil of the road. The plaintiffs claim that its construction and maintenance constitute a continuing trespass upon their land in the roadbed; and they have brought this action in equity to enjoin the trespass. Judgment has been entered herein dismissing the complaint on the merits, and from it this appeal has been taken.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The findings of fact made by the trial court are unusually full, and as to them no controversy exists. The questions of law arising are interesting and of great importance, quite apart from the. mutual rights of the parties to this action, and require careful consideration. It was found by the trial court that Black Stump road in all its physical characteristics is a rural highway. Its entire length of 2¼ miles is bordered by farming lands, on which are residing not more than 150 people. The nearest hamlet to the plaintiffs' property is at Bayside, distant by road 2½ miles. In one direction, at the intersection of the Black Stump road with the Fresh Meadow road, there is a public school, distant about 7,500 feet from the plaintiffs' premises. It is likewise found that the main use of the Black Stump road is by farmers and their servants engaged in the business of truck gardening or flower growing in the neighborhood. Under these circumstances, the appellants urge that the construction of the water main in question, no matter by what authority it was laid, amounts to a continuous trespass on their land, because it imposes upon their soil in the roadway a burden in excess of any proper public easement in a rural highway. It is well-settled law that in all highways, rural or urban, the public easement is primarily for passage over its surface. In what are called urban highways this primary easement is enlarged to cover a number of public uses not connected necessarily with the exercise of the right of passage, but growing out of the public necessities which attend a growth in population. Familiar among these public uses are the laying of sewers, water mains, gas pipes, and similar agencies. In considering the various uses to which highways are subjected, the courts have classified them as "street uses" and "municipal uses." A "street use" is one which is connected with the right of passage, and tends in some way to preserve or make more secure and easy its exercise. To this use or easement a rural highway is as much subject as a city street. For instance, a rural highway, to be properly used for passage, may require to be drained, and, if so, the construction of drains along it, whether surface or underground, will be within the proper exercise of the public easement. It may need to be lighted, and, if so, then gas pipes or electric lighting may be constructed along it. It may need to be sprinkled frequently, and the extent of traffic over it may suggest the use of watering places for animals, or travelers, and then water pipes and hydrants may be put on it in the exercise of the public easement of passage. When any of these means of preserving and making easy this easement of travel over the road is adopted by the public authorities, no new burden is imposed upon the land, if even a rural highway, and the courts will not inquire into the necessity of the use, leaving that as a question to be determined entirely by those charged by law with the care and control of the highway. Palmer v. Larchmont Electric Co., 158 N. Y. 231, 52 N. E. 1092, 43 L. R. A. 672. If the street or highway has been subjected to a use which is primarily a street or highway use, the extension of such use to purposes municipal in nature, but not connected directly with the right of passage, does not impose an additional burden on the land subject to the public easement of travel, whether the highways be rural or urban. If, however, the use be independent of

the right of passage, then it cannot be considered a street use, and as to urban streets or rural highways, whenever the fee of the road is in the abutting owner, it imposes a new burden beyond the public easement. Osborne v. Auburn Telephone Co., 189 N. Y. 393, 82 N. E. 428. Such a burden cannot be imposed without compensation to the owners of the fee of the· street or highway. Trustees, etc., v. Auburn & Rochester Railroad Co., 3 Hill, 567; Van Brunt v. Town of Flatbush, 128 N. Y. 50, 27 N. E. 973; Eels v. American Telephone & Telegraph Co., 143 N. Y. 133, 38 N. E. 202, 25 L. R. A. 640; Bloomⴕfield, etc., Gaslight Co. v. Calkins, 62 N. Y. 386.

With the foregoing considerations in mind, we shall pass to the inquiry whether the use sought to be enjoined in this action has any connection with a street or highway use of Black Stump road. The facts proved on the trial and found by the trial court disclose that the water main laid by the defendant was not intended to be used, nor is used, for any purposes connected with the public easement of passage over the road in question. It is true the hydrants connected with the water main can be used for the purposes of sprinkling the highway, but they were not intended for such use, and as yet have not been so used, and for some time to come shall not be so used. As proved at the trial and as found by the trial court, the use for which the main was laid and in which it is now employed is to enable the defendant to connect its various pumping stations, in order that it may, in addition to supplying the territory in which it has franchise rights, and corresponding public duties, fulfill its contract obligations with the city of New York to supply water for public consumption in a territory many miles distant from the plaintiff's property. If the road in question notwithstanding its present rural characteristics should be deemed in law an urban highway, then perhaps it may properly be subject to this present use, otherwise not. When a road ceases to be a rural highway and becomes an urban street has not been decided with any degree of definiteness. This lack of definiteness is not due to any inherent difficulty in the question itself, but is the result of judicial continence in the face of rapidly changing circumstances. A highway has been considered urban, and not rural, even when it was not included within the limits of a municipality, but was located so near a municipality that in all its characteristics it partook of the essential nature of an urban road, and has been held subject to urban easements generally, and especially to the laying of water mains. Crooke v. Flatbush Waterworks Co., 29 Hun, 245; Witcher v. Holland Waterworks Co., 66 Hun, 619, 20 N. Y. Supp. 560; s. c. 142 N. Y. 626, 37 N. E. 565. Conversely, a street or highway within the limits of an incorporated village has been held because of its physical characteristics and surroundings to be rural, in its legal aspects, and not urban, in its subjection to public easements. Powers v. State Line Telephone Co., 116 App. Div. 737, 102 N. Y. Supp. 34; Hudson River Telephone Co. v. Forrestal, 56 Misc. Rep. 133, 106 N. Y. Supp. 404. In the two cases last cited, the courts seem to have placed their decisions upon the point that the roads in question, though within the limits of incorporated villages, were to be considered as rural highways not subject to urban easements. The use of the highways in both in-

stances, which was said to impose an additional burden on the fee of the land, was for the erection of telephone poles and systems of overhead wires. To hold that such a burden was in excess of an ordinary street use, it was not necessary to seek to bring the roads in question within the classification of rural highways, for, whether rural or urban, the erection of telegraph and telephone poles imposed an additional burden on the fee of the street, for which an abutting owner who owns to the center of the street or road is entitled to compensation. Osborne v. Auburn Telephone Co., supra.

The laying of water mains however, in a public highway has been held generally to be a proper exercise of an urban easement which imposes no new burden upon the fee of an urban street. Crooke v. Flatbush Waterworks Co., supra; Witcher v. Holland Waterworks Co., supra. It must be noted, however, that in each of these cases the water mains in question were by law available to the uses of the residents along the highways or streets in which they laid for ordinary domestic use as well as protection from fire. Whether even an urban street in which the fee is in the abutting owners can be subjected to the use of underground water mains unless the water supply is available by law, and not as a matter of favor, to residents along said streets, appears not to have been decided as yet in this state at least. The court in Witcher v. Holland Waterworks Co., supra, seems to recognize a distinction in this point between rural and urban highways, for in deciding in the case before it that the roadways of an incorporated village were subject to an urban easement for the laying of water pipes it said:

"This case is distinguishable from the cases which hold that the appropriation of a rural highway for the conveying of water to another town or village, the inhabitants along the line of the pipes not being entitled to the use of the water, is imposing an additional burden, for that is the taking of one's property for the use of others; he having no right to the use thereof."

The apparent distinction between rural and urban highways is not recognized in the courts of all the states, as, for instance, in Massachusetts rural and urban highways are held subject to precisely the same public easements, irrespective of the fee ownership, and such public easements include rights for the construction of telegraph and telephone systems, which are not recognized in this state. Lincoln v. Commonwealth, 164 Mass. 1, 41 N. E. 112; Pierce v. Drew, 136 Mass. 75, 49 Am. Rep. 7. In this state, however, there is a clear recognition of a distinction between rural and urban highways on the question of the extent of the public easement therein. Whether there is any logical basis for the existence of this distinction is another question as to which it is unnecessary to express any opinion at present. As the law now exists in this state, this distinction is well established. The question arises whether Black Stump road, notwithstanding its present physical characteristics, is to be deemed urban or rural in its legal relation to public easements. If it is to be deemed urban, the public easement in it may well be great enough to subject it to burdens in favor of other parts of the same municipality, for the municipality is one entity, and should not be considered as an aggregation of separate localities. In varying extents all the localities in the city of New

York share ultimately in each other's growth and increase in value, and each should share in the street burdens for the benefit of each other. In no other way can the various localities of the city of New York be tied together into one whole, instead of remaining practically separate and isolated communities. All the streets and highways of the city should be deemed of it as well as in it, and all should be considered urban in their subjection to public easements, irrespective of any special present participation of any locality in the advantages which follow. In Van Brunt v. Town of Flatbush, ut supra, it was held that the streets and roads of the then town of Flatlands could not be subjected to a public easement for the laying of a sewer system for the exclusive use of the residents of the neighboring town of Flatbush. There, however, there were two distinct municipalities, each independent in government of each other, and with no legal community of interest. The rule there applied has no necessary application where there is but one municipality and a legal community of interests. It is a familiar circumstance that relief sewers are constructed through city streets to relieve a situation existing in a locality of the city distant from the greater part of the sewer. Likewise water mains are laid through city streets as trunk lines to increase or furnish a supply in various special localities. The right to lay these sewers and water mains under the urban easement seems never to have been questioned heretofore on the part of any owner of the fee of the streets or highways through which such sewers or water mains are laid. Therefore we think that Black Stump road should be deemed subject to urban easements for the benefit of the city at large, or any locality in it requiring such use. Yet this holding may not be determinative necessarily of this present controversy. Grant that the easement which the defendant claims is an urban easement in an urban street, yet the defendant may have no legal right to attempt to use it. Urban easements do not lie around loose for every one to use, as did golden nuggets for children to play with, as in the fabled land of El Dorado. The defendant apparently has obtained no franchise to use Black Stump road from the city of New York, according to the provisions of the Greater New York charter. It had, it is true, obtained permits from the president of the borough of Queens and the deputy commissioner of water supply in the borough of Queens, and the commissioner of public works in the same borough, to lay this main along the road or highway in question. Yet none of these functionaries had or has any power to grant to any person or corporation the right to use the streets of the city for the purposes here involved; but whenever such a right of use exists, as a matter of franchise legally granted, it is the duty of these officers to grant permits for such physical interference with the highway as may be proper to allow an enjoyment of the franchise rights; yet, where there is no franchise right, a permit to occupy the public highway in the manner here in question carries with it no legal right of occupancy. Ghee v. Northern Union Gas Co., 158 N. Y. 510, 53 N. E. 692. Did the defendant have any franchise right to use the highways of the town of Flushing before it became the Third ward of the borough of Queens on January 1, 1898? It asserts that it had, and, if so, then such rights

were concededly unaffected by the consolidation resulting from the Greater New York charter, for its express provisions so provided. Chapter 378, Laws 1897, § 1538.   The defendant was organized, under the transportation corporations law (Laws 1890, c. 556) prior to 1898, for the purpose of supplying water to the inhabitants of the then town of Newtown, which on January 1, 1908, became the Second ward of the borough of Queens of the city of New York.   The town of Newtown bordered partly on the then city of Brooklyn, the then city of Long Island City, and the then town of Flushing.   Some time after its incorporation, the defendant acquired the capital stock of, and became merged with, two other water supply corporations, the Wyckoff Heights Water Company, organized to supply water in the town of Newtown, and the Manhasset Water Company, organized to supply water in the adjoining town of North Hempstead, in Nassau county. For the purposes of this opinion, we shall assume the due organization of the defendant and its possession of all the powers and duties of the constituent corporations.   None of these corporations was organized to supply water in the town of Flushing.   If any of them separately, or all of them together, acquired a right to lay pipes in the town of Flushing, when and how was it gotten?   Whatever rights the defendant or its constituent corporations possessed to lay pipes in the town of Flushing came from the provisions of the transportation corporations law as it existed at the time of their organization.   The defendant was incorporated in 1893, and obtained from the public authorities of the town of Newtown permission to supply water in that town as provided by section 80 of the transportation corporations law, as amended by chapter 617, Laws 1892.   The Wyckoff Heights Water Company was likewise organized in 1893 in manner as provided in the same statute. The Manhasset Water Company was organized in May, 1900.   As the statute stood from 1892 until its amendment in 1905, section 82 thereof in prescribing the various powers of the corporations formed under section 80 thereof provided that every such corporation should have power, in addition to laying pipes in the town for which it was organized to supply water, "to lay their water pipes in any streets or avenues or public places of an adjoining city, town or village, to the city, town or village where such permit has been obtained"—that is, the permit to supply water and lay pipes for that purpose, as provided in section 80 of the statute.   The defendant, however, did not seek to exercise any such power under section 82 until after that section had been amended in 1905.   Chapter 210, Laws 1905.   Then the section was amended by annexing to it a provision as follows:

"Provided that such right in an adjoining city shall be subject to the permission of the local authorities thereof and upon such conditions as they may prescribe."

Section 82 of this statute, as it stood in 1893 or as it stood thereafter, did not purport to give a water supply company organized in one town a right to supply water to the public in another town without a franchise from the latter.   City of Rochester v. Rochester & Lake Ontario Water Co., 189 N. Y. 323, 82 N. E. 154.   Its right to lay pipes in an adjoining town or city was intended solely to enable it to carry

out the purpose of supplying water in the towns in or for which it was organized. To carry out the purposes of its organization, it might not only lay its pipes through an intervening town to or from its source of supply, if located outside the territory for which it was organized, but it could also lay pipes in the adjoining town for the purpose of better connecting its supply system in the town for which it was organized. Village of Pelham Manor v. New Rochelle Water Co., 143 N. Y. 532, 38 N. E. 711. Likewise where a water company had been organized under the provisions of this statute to supply water in several towns, for which it had obtained the necessary permits from the local authorities, it was held that the company might lay its pipes through the streets of an intervening city to reach any of the towns for which it was organized to supply water. Rochester, etc., Water Co. v. City of Rochester, 176 N. Y. 36, 68 N. E. 117. Both of these cases were decided before the statute was amended in 1905, in the manner before indicated, requiring the consent of the local authorities. In the case at bar the water main was laid after the amendment of 1905.

Did the right of laying pipes in an adjoining town or city as it existed prior to the amendment of 1905—that is, without any condition as to the consent of the local authorities of the adjoining municipality —so constitute a part of the franchise rights of the corporation as to be property and thus beyond legislative recall, or was it only a grant of incidental power, not in the nature of a property right or franchise, but subject to modification or revocation before it was acted upon? Upon the proper answer to this question rests to a great extent the proper determination of the controversy between the parties to this action. In the case of Rochester, etc., Water Co. v. City of Rochester, ut supra, a water company had been organized to supply water in several towns under the provisions of this statute before its amendment in 1905. Between these towns the territory of the city of Rochester intervened. The water company sought to lay its pipes through certain streets of the city of Rochester for the purpose of connecting by one supply system the several towns in which it had franchise rights and duties. The city of Rochester questioned the right of the water company to use its streets for such a purpose, and interfered with the work of the water company in laying the pipes. An action was brought in equity to prevent such interference upon the part of the city. It was sought to justify this interference on the ground that by chapter 553 of the Laws of 1903, which amended the charter of the city, any right of a private water company "to enter upon and lay pipes for the conveyance of water in the public streets and highways of the city of Rochester, * * * accruing, accrued or acquired under and pursuant to any previous act of the Legislature, or part of such act, is hereby repealed and revoked." It was held by a divided court, by a vote of four to three, that, in so far as this act of 1903 sought to deprive the water company of its previously existing right to lay water pipes through streets of the city of Rochester, it was unconstitutional. The reasons for this holding are briefly stated in the opinion of the court as follows:

"As we have seen, the plaintiff corporation had been perfected, and it had paid the state taxes imposed therefor. It had caused surveys to be made and a map filed, locating its route, and had entered into a contract for the construction of its plant, including the laying of its pipes. It had acquired its right of way and had entered into contracts for the supplying of water, in accordance with its charter. It had expended money and incurred obligations. All this had taken place before the legislation of 1903. The plaintiff, in incurring these obligations and in making these expenditures, had the right to rely upon the faith of the franchise which it had acquired, under which it had the right to supply the localities with water. We think these rights had become vested and were property within the meaning of the Constitution, which prohibits the deprivation of a person of property without due process of law. People v. O'Brien, 111 N. Y. 1 [18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684]."

It becomes very important to ascertain how far the facts in the case at bar are to be governed by the reasoning of the authority just cited. This importance arises from the fact that if at the time this defendant laid the pipes in front of plaintiffs' premises its legal right to do so was dependent upon section 82 of the transportation corporations law, as amended in 1905, which required the permission of the "local authorities," as therein specified, then a very grave question arises whether such permission has been obtained from the "local authorities" of the city of New York within the meaning of the statute, as amended in 1905. Ghee v. Northern Union Gas Co., ut supra.

As before stated, the defendant was organized to supply water in the former town of Newtown, now the Second ward of the borough of Queens. This territory is quite populous, having about 60,000 inhabitants, and it is growing quite rapidly in population. It is entirely dependent upon the defendant for its water supply, which is furnished through some 8,000 tap connections. Within the territory of the former town of Newtown, now the Second ward of the borough of Queens, the defendant has sources of water supply amounting to about 11,000,000 gallons per day, and the daily consumption within the same territory is about 8,000,000 gallons per day. Adjoining this territory is the First ward of the borough of Queens, formerly the city of Long Island City. In this last-mentioned territory water is supplied by the city of New York. As the available supply is inadequate, the city of New York has bought for some time from the defendant water delivered into the city mains from the defendant's pipes at a point near the boundary of the two wards. Similar arrangements existed between the defendant and the former city of Long Island City. The amount of water thus supplied by the defendant to the city of New York for distribution in the First ward of the borough of Queens is from 6,000,000 to 8,000,000 gallons a day at the present time. In addition to the supply for use in the First ward of the borough, the defendant also supplies water to the city of New York for use in street hydrants in the Second ward (formerly the town of Newtown) for road sprinkling and protection from fire. In 1905 and 1906 there was a shortage in the defendant's water supply in one of the sections of the Second ward, for which it was organized and as to which it had franchise duties, as well as rights. The commissioner of water supply of the city of New York refused to per-

mit the defendant to diminish the supply furnished under contract for the use of the First ward, as to which it had no franchise duties, in order to increase the supply available for use in the territory in which it had franchise duties. The commissioner directed the defendant to acquire further sources of water supply, and, as there were no further sources of supply in the Second ward (formerly the town of Newtown), the defendant acquired additional sources of supply at Douglaston in the Third ward (formerly the town of Flushing), and erected there a pumping station from which it pumps water through the main laid in front of the plaintiffs' premises to its mains in the Second ward (formerly Newtown), thus connecting the sources of supply at Douglaston with the distributing system in the Second ward (formerly Newtown). The acquisition of this new source of supply and its connection with the existing system were all undertaken and carried through subsequent to the amendment of the transportation corporations law in 1905. Thus the case here presented has not the features which led the court in the case of the Rochester, etc., Water Co. v. City of Rochester, supra, to hold that the powers granted by section 82 of that statute had become in that case vested property rights and beyond legislative recall or modification. It is not so here, and the legal right of the defendant in 1906 to lay pipes through the Third ward of the borough of Queens (the former town of Flushing) must be limited to the extent to which the amended statute of 1905 gives such right; that is, the right is subject to the "permission of the local authorities, and upon such conditions as they may prescribe." The defendant claims to have received such permission; that is, permission from the department of highways in the borough of Queens and from the commissioner of water supply of the city of New York. In Ghee v. Northern Union Gas Co., ut supra, a question arose as to what officers of the city of New York under the provisions of the Greater New York charter answered the description of the words "the municipal authorities," which were used in section 61 of the transportation corporations act, which related to the incorporation and powers of gas companies. Chapter 566, Laws 1890. The section of the statute there under consideration required the consent of the "municipal authorities" for the use by gas companies of the city streets for laying gas mains. It was there held that the words "municipal authorities" did not mean the administrative officers of the city who were charged with the "cognizance and control" of the highways, but referred to the municipal assembly of the city of New York as the legislative body on which was conferred by the charter of said city the sole power of granting such rights to use the city streets. Under the revised charter of 1901 (chapter 466, Laws 1901), this power was conferred upon either the board of aldermen acting by an ordinance, or upon the board of estimate and apportionment acting by a resolution; the action of either body being subject to the approval of the Mayor. Section 74, supra. The reasons given by the court for its decision in Ghee v. Northern Union Gas Co., ut supra, would seem to apply with equal force to the case at bar. A legal permission to the defendant to lay its mains in the streets of the city of New York would amount to a franchise right, and the power to grant such

right was not in the public officers from whom the defendant has obtained the alleged permission. It was found by the trial court that:

"One of the purposes of laying the pipe line aforesaid in the plaintiffs' premises was to supply the citizens and public authorities of the former city of Long Island City with water, under the contract with the city of New York, described in finding 27 hereof."

Turning to finding 27, it appears that in July, 1907, the defendant and the city of New York entered into a contract by which the defendent was to supply to the city of New York at a point "near the boundary line of the former town of Newtown in the Second ward of the borough of Queens" not less than 1,000,000 gallons of water per day for the period of five years. That the main in question serves to enable the defendant to carry out this contract is unquestioned. Yet the contract here referred to does not purport to give the defendant any right to use the streets of the city for the purpose of performing the contract duties, but it assumes such performance by the defendant through its supply system existing in the territory of the former town of Newtown. The pipes in controversy conduct water, not directly to the mains of the city of New York, but directly to the mains of the defendant in the Second ward (formerly Newtown), and then through those mains to the boundary of the Second and First wards (formerly Newtown and Long Island City). The water conducted through the main in controversy is primarily available for use in the territory for which the defendant was organized, and only secondarily available, as a surplus supply, to be delivered to the City of New York under a contract of sale, just as any other commodity might be delivered. It is argued that the defendant has further acquired a right to lay and maintain the water main in question under the provisions of section 516 of the Greater New York charter, supra, which reads as follows:

"All persons acting under the authority of the city of New York shall have the right to use the ground or soil under any street, highway or road within this state for the purpose of introducing water into the city of New York, on condition that they shall cause the surface of said street, highways or roads to be restored to its original state, and all damages done thereto shall be repaired."

This statute does not apply to the present situation, for the defendant in laying the main in question did not act "under the authority of the city of New York" within the meaning of the statute. It acted under its own authority, great or small, and the water which it conducts through this main in controversy is for its own uses, partly to fulfill its franchise duties in the territory for which it was organized, and partly to enable it to sell water for use in another territory in which it has neither franchise rights nor duties.

The foregoing views require a reversal of the judgment and the granting of a new trial, costs to abide the final award of costs, and I recommend judgment accordingly. All concur.