THE CITY OF NEW YORK, Respondent, *v.* THE CITIZENS WATER SUPPLY COMPANY OF NEWTOWN, Appellant.

First Department, March 23, 1923.

Water companies — action to compel removal of water mains in New York city on ground of non-compliance with Transportation Corporations Law, § 82, subd. 2, as amended by Laws of 1905, chap. 210 — question not academic though defendant's property has been since acquired by city in condemnation proceedings — amendment of 1905, providing for permission of adjoining town or city through which water company desires to lay pipes, is prospective only and not applicable where work commenced prior to enactment — rights acquired by defendant under law when it was organized cannot be revoked.

The questions arising in an action by the city of New York to compel a water company to remove certain of its mains from the third and fourth wards of the borough of Queens, formerly the towns of Flushing and Jamaica, which are the only means of conveying water from the sources of supply to the territory served, on the ground that they were laid in violation of subdivision 2 of section 82 of the Transportation Corporations Law, as amended by chapter 210 of the Laws of 1905, do not become academic through the acquisition of defendant's entire plant by the city of New York in condemnation proceedings instituted before the judgment in this action was entered but concluded thereafter.

The amendment of subdivision 2 of section 82 of the Transportation Corporations Law by chapter 210 of the Laws of 1905, which provides that the right of a water company to lay its pipes in a city, town or village adjoining the city, town or village in which it has a permit to lay pipes, is subject to the permission of the local authorities and upon such condition as they may prescribe, is prospective only and does not apply to the defendant corporation since the defendant was organized prior to its enactment and had, in reliance upon the

right to lay its mains in an adjoining town without said permit, purchased a source of supply in said adjoining town and commenced work prior to the enactment.

The defendant by its incorporation became vested under section 82 of the Transportation Corporations Law as it then existed, with two franchise rights, *first*, to lay pipes in the streets and distribute water in the town of Newtown; *second*, to lay pipes through the streets of adjoining cities, towns and villages without the consent of the local authorities thereof, for the purpose of connecting its pipes in Newtown with an outside source of water supply, and those franchise rights cannot be taken away except by due process of law and compensation.

It was the defendant's right to use the streets of the adjoining towns, which was preserved to it upon consolidation of the towns into Greater New York, unburdened by the change brought about by the consolidation into one municipality of the various cities, towns and villages with the old city of New York, and, therefore, it was unnecessary to obtain the consent of the board of estimate and apportionment of the city of New York in order for it to exercise its franchise rights in question.

APPEAL by the defendant, The Citizens Water Supply Company of Newtown, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of August, 1921, upon the decision of the court rendered after a trial at the New York Special Term requiring the defendant to remove its water mains and pipes from certain streets in the third and fourth wards of the borough of Queens, New York city.

*Ingraham, Sheehan & Moran* [*Samuel F. Moran* of counsel; *John D. Monroe* with him on the brief], for the appellant.

*George P. Nicholson, Corporation Counsel* [*Joseph P. Morrissey* of counsel; *James A. Donnelly* with him on the brief], for the respondent.

PAGE, J.:

The judgment restrains and enjoins the defendant from using and occupying with its water supply mains certain streets of the third and fourth wards of the borough of Queens, and requires it to remove the same from said streets. The mains so directed to be removed are the only means of conveying water from the sources of supply to the territory served, and consist of 24,555 feet of thirty-six-inch mains and 9,085 feet of twenty-four-inch mains laid in 1906, 9,350 feet of sixteen-inch mains laid in 1907, and 4,847 feet of twenty-inch mains laid in 1911, a total of 47,837 feet (9.06 miles) of water mains, and are all the mains of the defendant in the third and fourth wards.

In view of the necessities of the inhabitants of the second ward supplied by the defendant with water, and of the inability of the defendant or the city of New York to supply them otherwise than

through the mains in question, the operation of the judgment was suspended for a period of one year from the date of its entry August 5, 1921.

Before the judgment was entered and on August 2, 1921, the city of New York began condemnation proceedings for the acquisition of the defendant's entire plant, including the mains in question, which resulted in the vesting of title thereto in the city on April 19, 1922, when the oaths of the commissioners of appraisal were filed; and the city has been using said mains for the purposes for which they were originally laid, and they have been used by the plaintiff since said date. Although the judgment is no longer effective in its mandatory and injunctive features, the matter therein adjudicated has not become academic. For it is an adjudication upon the defendant's property in the said mains and rights to use the streets, and has a direct bearing upon the subject-matter of the condemnation proceedings.

The defendant was incorporated in the year 1893 under the Transportation Corporations Law, for the purpose of supplying water in the town of Newtown, Queens county. There is annexed to the certificate of incorporation, as a part thereof, a permit signed and acknowledged by the officials of the town of Newtown, authorizing the formation of the defendant for the purpose of supplying the said town with water pursuant to section 80 of the Transportation Corporations Law. In April, 1901, the Wyckoff Heights Water Company, a corporation similarly organized in 1893 for the purpose of supplying water in a portion of the town of Newtown, was merged with the defendant; and in February, 1906, the Manhasset Water Company, a corporation similarly organized in 1900 for the purpose of supplying water in the town of North Hempstead, county of Nassau, was merged with the defendant.

Defendant commenced supplying water in the town of Newtown in June, 1894, and continued to supply the inhabitants and the town authorities for fire protection and other municipal purposes until January 1, 1898, when the towns of Newtown and the adjoining towns of Flushing and Jamaica were consolidated with the city of New York and became, respectively, the second, third and fourth wards of the borough of Queens by virtue of the provisions of the Greater New York charter (Laws of 1897, chap. 378). From January 1, 1898, until April 19, 1922, when its property was taken by the city, defendant supplied practically all the water consumed in the second ward by the inhabitants and by the city of New York for fire protection and other municipal purposes. The area of the second ward is twenty-three square miles. In 1896 its

inhabitants numbered 17,500, and in 1921 they had increased to about 200,000. In 1921 the average daily consumption of water was upwards of 9,900,000 gallons, and the maximum daily consumption was upwards of 14,000,000 gallons. Originally adequate sources of water supply were found in the second ward; but with the growth of population the sources of supply available in said ward became inadequate; not more than 7,000,000 gallons could be so obtained, and it soon became evident that outside sources must be secured. In 1901 defendant purchased 110.59 acres of land at Douglaston near the northeasterly corner of the third ward, borough of Queens, for an additional source of water supply, and in 1902 drilled wells thereon. Thereafter contiguous parcels were acquired, additional wells were drilled, and between March and October, 1906, defendant constructed thereon its pumping station No. 8 with a capacity of 8,000,000 gallons per day. At the same time it laid the large transmission mains, hereinbefore mentioned, through the third and fourth wards, to bring the water into the second ward. From 1904 to 1907 the defendant purchased additional lands at Little Neck and Valley Stream in North Hempstead, and drilled wells thereon; and when this action was begun in 1917, the mains in question were carrying water from three large pumping stations located at Douglaston and Little Neck. Shortly after the formation of the borough of Queens, the city found that its water supply for the first ward of said borough, which was formerly Long Island City, was inadequate, and contracts were made from that time on until the Catskill water supply became available, for connections to be made between the city's mains in the first ward and the defendant's mains in the second ward for water to supplement the city's supply. It was to provide in part for this additional consumption of water that made necessary the connection with the outside supply in the third ward and in North Hempstead; and it was upon the insistence of the commissioner of water supply, gas and electricity of the city of New York that the defendant should build these mains in the third and fourth wards so that it might be able to supply water to the city in the first ward, that these pumping stations were built and these outside sources of supply made available through the connection with the company's mains at the boundary of the first and second wards. Permits for the laying of the mains were granted by the proper city official. Furthermore, although the defendant did not supply customers in the third ward, the city made a contract with the defendant whereby it tapped the thirty-six-inch main in that ward and in part supplied the inhabitants of that ward with water from these very mains.

In 1917 this action was commenced on the theory that an amendment to section 82 of the Transportation Corporations Law by chapter 210 of the Laws of 1905 deprived the defendant of the right to lay its pipes in the third and fourth wards without obtaining the permission of the proper authorities of the city of New York and upon such conditions as they might prescribe and as the defendant failed to obtain a franchise from the board of estimate and apportionment to lay these mains in the streets of said wards, they were unlawfully in the streets.

Section 82 of the Transportation Corporations Law, at the time the defendant was incorporated and until the amendment of 1905,* so far as material herein, read as follows:

" § 82. Powers.— Every such corporation shall have the following additional powers:

" 1. To lay and maintain their pipes and hydrants for delivering and distributing water in any street, highway or public place of any city, town or village in which it has obtained the permit required by section eighty of this article.

" 2. To lay their water pipes in any streets or avenues or public places of an adjoining city, town or village, to the city, town or village where such permit has been obtained."

By chapter 210 of the Laws of 1905, subdivision 2 was amended by changing the final period to a comma and adding " provided that such right in an adjoining city shall be subject to the permission of the local authorities thereof and upon such conditions as they may prescribe."   Said subdivision was further amended by chapter 455 of the Laws of 1906, but that amendment is not material to this case.

The learned justice at Special Term relied upon the case of *Richards* v. *Citizens' Water Supply Co.* (140 App. Div. 206) as governing the decision in this case.   Richards was an abutting property owner owning to the center of the road on one of the roads in which the thirty-six-inch main was laid.   He brought an action to recover his damages for an added burden on his fee. The court held that if the defendant had a franchise to lay this pipe, Richards could not recover; but it held that while defendant had a right to lay its pipes in said road without the consent of the local authorities prior to the amendment of 1905, after that amendment took effect defendant had no such right; and it distinguished the case of *Rochester & Lake Ontario Water Co.* v. *City of Rochester* (176 N. Y. 36) in this — that in that case the company had acquired

---

* See Gen. Laws, chap. 40 (Laws of 1890, chap. 566), § 82, as amd. by Laws of 1892, chap. 617; re-enacted with additional amendments in Consol. Laws, chap. 63 (Laws of 1909, chap. 219), § 82.— [REP.

land for laying pipes from Lake Ontario to the city of Rochester, had entered into various construction contracts, filed surveys and maps, and thus had incurred considerable expense, in reliance upon its rights under section 82 of the Transportation Corporations Law, when an act was passed applicable only to the city of Rochester, but otherwise similar to the 1905 amendment to section 82; whereas in the *Richards* case the additional water supply was acquired and the pumping station was erected after the passage of the amendment of 1905. Evidently the facts were not fully developed in the *Richards* case. It is proved in this case that land for a further water supply was purchased and wells were drilled thereon prior to the enactment of the amendment, and in reliance upon the right to lay the mains through the adjoining towns. We cannot, therefore, recognize the distinction drawn between the two cases as entitled to any weight in our determination. We recognize *Rochester & Lake Ontario Water Co.* v. *City of Rochester* (*supra,* 50) as a controlling authority in the instant case for the principle that the water company " in incurring these obligations and in making these expenditures, had the right to rely upon the faith of the franchise which it had acquired, under which it had the right to supply the localities with water. We think these rights had become vested and were property within the meaning of the Constitution, which prohibits the deprivation of a person of property without due process of law. (*People* v. *O'Brien,* 111 N. Y. 1.)"

Furthermore, I am of opinion that, in so far as the opinion in the case of *Richards* v. *Citizens' Water Supply Co.* (*supra*) related to the right that the defendant had in the streets being subject to revocation, it was erroneous, as was also the holding that the amendment of 1905 to the Transportation Corporations Law applied to the franchise of this defendant. " The title to the streets and highways, whether in the people or a municipality, or in fee or in easement, is held for the public use. * * * The power of the Legislature in respect to them is qualified by the Constitution alone." (*People ex rel. City of New York* v. *N. Y. R. Co.,* 217 N. Y. 310, 315.) The Legislature can authorize structures in them for private use and benefit, which are reasonably incident to the ordinary uses of a street, which, without authority, would be purprestures. (*Wormser* v. *Brown,* 149 N. Y. 163; *Hoey* v. *Gilroy,* 129 id. 132.) It can, in so far as the State or people at large are concerned or have rights in them, subject them in part or wholly to public use other than an ordinary street use. (*Bradley* v. *Degnon Contracting Co.,* 224 N. Y. 60, 68.) The laying of water mains in the streets of a municipality for the purpose of distributing water to the inhabitants, or for the

use of the municipality, is a well-recognized public use. The Legislature evidently anticipated that a water company, performing its functions of supplying a city, town or village with water, might for some reason find it necessary to cross the boundary line of an adjoining city, town or village, not for the purpose of supplying the adjoining municipality, but for the purpose of effectively supplying the city, town or village which it was created to serve; and where that necessity arose section 82, subdivision 2, gave power to the water company to lay its water pipes in any streets, avenues or public places in the adjoining city, town or village, without obtaining the consent of the local authorities. (*Village of Pelham Manor* v. *New Rochelle Water Co.*, 143 N. Y. 532, 536; *Rochester & Lake Ontario Water Co.* v. *City of Rochester, supra.*) The grant of power to do an act creates a right to perform it. (*Matter of Lima, etc., R. Co.*, 68 Hun, 252, 254.) Hence, when the defendant was incorporated pursuant to the provisions of section 80 of the Transportation Corporations Law of 1890 (as amd. by Laws of 1892, chap. 617) and complied with the provisions thereof, the defendant became vested by virtue of section 82 of said law with two franchise rights: (1) To lay pipes in the streets and distribute water in the town of Newtown; and (2) to lay pipes through the streets of adjoining cities, towns and villages, without the consent of the local authorities, for the purpose of connecting its pipes in Newtown with an outside source of water supply. The franchise rights became property which could not be taken away except by due process of law and compensation. In *Matter of New York Electric Lines Co.* (201 N. Y. 321, 331) it was held that the bare acceptance of the rights did not operate to invest an irrevocable franchise, but that, until it was accepted and acted upon, it was a mere license revocable by the local authorities. On a writ of error the United States Supreme Court (*New York Electric Lines* v. *Empire City Subway*, 235 U. S. 179, 191, 193) held that when the conditions of a similar statute were complied with, the grant became immediately operative and could not thereafter be revoked or impaired by municipal resolution or ordinance, and the granted right was property, and as such is inviolable — citing numerous cases in the courts of this State and the United States Supreme Court to sustain the proposition. It also held that the franchise could be forfeited for nonuser by appropriate legal proceedings. Since this decision of the United States Supreme Court the Court of Appeals has adhered to the principle therein declared. (*First Construction Co.* v. *State of New York*, 221 N. Y. 295, 316; *Holmes Electric Protective Co.* v. *Williams*, 228 id. 407.) There is no question of nonuser in the instant case. The defendant immediately entered

upon the exercise of its franchise rights in the town of Newtown; before the enactment of the amendment of 1905 it expended money and performed service in order that it might exercise the right to lay mains in the adjoining towns. These mains were laid and their use had been continuous for many years before the city attempted a revocation of the franchise right which the defendant was then exercising.

The amendment of 1905 was not intended to divest vested rights and work a forfeiture of franchises acquired under the existing law, in reliance upon which investments had been made. Where there are two possible constructions of a statute, one of which would work a forfeiture and the other would not, the latter must prevail. The amendment should, therefore, be held to be prospective and not retroactive, to apply to franchises acquired in the future and not to those secured in the past. In this view the amendment would not apply to the franchise right of the defendant to lay its pipes in the adjoining city, town or village.

Furthermore, in my opinion, the amendment did not apply to the franchise of this defendant. As we have stated, the right to lay pipes in the streets and highways of the adjoining towns of Jamaica and Flushing was a part of the original franchise of the defendant. The consolidation of these towns into the city of New York neither abridged nor extended the franchise rights of the defendant. (Greater N. Y. Charter,* § 1538; *Braffett* v. *Brooklyn, Q. C. & S. R. R. Co.,* 204 N. Y. 440, 447.) Therefore, when Newtown, Flushing and Jamaica all became a part of the city of New York, the right of the defendant to lay its pipes and distribute water within the territorial limits of the town of Newtown was continued in the second ward of the borough of Queens, city of New York; and the franchise right to extend its supply mains into the towns of Flushing and Jamaica was continued in the third and fourth wards of said borough and city without additional burden or obligation imposed on the franchise by reason of the fact that the towns had all become parts of one municipality. When the amendment of 1905 was adopted, the defendant's right to extend its mains was not into an adjoining city, but to lay pipes in the streets of the same city. It is to be noted that the amendment did not change the law with relation to the right to lay pipes in an adjoining town without consent of the local authorities; but that only in those cases where a corporation empowered to operate in one distinct municipality sought to use the streets of an adjoining city, was the consent of the local authorities required. It was the defendant's right to use the streets of the adjoining

* See Laws of 1897, chap. 378; Laws of 1901, chap. 466.— [REP.

*towns*, which was preserved to it upon consolidation, unburdened by the change brought about by consolidation into one municipality of the various cities, towns and villages with the old city of New York. Therefore, it was unnecessary to obtain the consent of the board of estimate and apportionment of the city of New York, in order for it to exercise its franchise right to lay pipes within the territorial limits of the former towns of Flushing and Jamaica.

The judgment should, therefore, be reversed, with costs to the appellant, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Judgment reversed, with costs to appellant, and complaint dismissed, with costs. Settle order on notice.